**The CELOTEX CORP., Appellant,**

v.

**Douglas AUTEN, Appellee.**

No. 94–1003.

Supreme Court of Iowa.

Dec. 20, 1995.

Stephen W. Spencer and Joseph M. Barron of Peddicord, Wharton, Thune and Spencer, P.C., Des Moines, for appellant.

Tito Trevino of Trevino Law Office, Fort Dodge, for appellee.

Considered by McGIVERIN, C.J., and LARSON, LAVORATO, NEUMAN, and ANDREASEN, JJ.

LAVORATO, Justice.

This workers' compensation case comes to us on further review. The Celotex Corporation appealed from an industrial commissioner's decision awarding 100% permanent total industrial disability benefits to its former employee, Douglas B. Auten. *See* Iowa Code § 85.34(3) (1987). On judicial review, the district court affirmed the industrial commissioner's award of benefits. The court of appeals affirmed, and we granted Celotex's application for further review.

Celotex presses two issues in its petition for further review. First, Celotex contends the industrial commissioner incorrectly concluded there is substantial evidence that Auten is 100% permanently and totally industrially disabled regarding an injury he sustained during the course of his employment. We conclude there is substantial evidence to support the commissioner's decision on this issue, and we give the issue no further consideration. Because the district court and the court of appeals reached the same conclusion, we affirm on this issue.

Our reason for granting further review was to revisit the second issue Celotex raised: whether it is appropriate to apportion a present industrial disability between a recent work-related injury and prior work-related injuries. We agree with the industrial commissioner, the district court, and the court of appeals that there should be no such apportionment. We therefore affirm on this issue as well.

Auten began employment with Celotex in May 1959. In 1977 he sustained an injury to his neck while unloading stucco blocks from boxcars. Because of this injury, Auten had surgery on his cervical spine in 1979. In approximately June 1980, the parties negotiated a settlement agreement in which Celotex agreed to pay Auten permanent partial disability benefits for a 25% body as a whole injury. The total amount of the settlement was $17,000.

In 1982 Auten tore his right bicep tendon while lifting a bucket of water. As a result he received permanent partial impairment ratings to his right arm. In 1984 Auten received a lump-sum payment of $10,000 in a special case settlement of the 1982 injuries and of a review-reopening claim for the 1977 injury.

Under his union contract, Auten "bumped into" the sole janitorial position at Celotex in 1980. It is undisputed that in May 1987, Auten was injured during the course of his employment as a janitor at Celotex. When he attempted to untangle water hoses hang-

ing from a wall hook, Auten experienced a tearing sensation in his right shoulder.

Celotex sent Auten to a local doctor, who referred him to Dr. Arlen Hanssen at the Mayo Clinic. Dr. Hanssen examined Auten on September 3 and performed an arthrogram (a photograph of a joint made with X-rays). The arthrogram revealed that Auten had sustained a torn rotator cuff to his right shoulder. Auten underwent acromioplasty (surgical repair of the acromial process) with rotator cuff repair and was off work recuperating until the spring of 1988.

On March 28 Dr. Robert Weatherwax examined Auten at Celotex's request. Dr. Weatherwax determined that Auten could return to work as early as April 4, but with several restrictions. Auten should engage in no activities requiring him to lift his right shoulder above horizontal. He could not do any pushing, pulling, or lifting with that shoulder of any weight greater than five pounds.

Auten returned to work on April 4. At the hearing before the deputy industrial commissioner, Auten stated he was unaware of the restrictions Dr. Weatherwax had imposed. Auten worked—apparently without incident—until November 21, when Celotex again sent him to Dr. Weatherwax. After this examination Dr. Weatherwax sent Celotex's claims management service a letter. In the letter Dr. Weatherwax recommended that Auten permanently refrain from mopping. In addition, Auten was to avoid pushing, pulling, and lifting of any amount greater than ten pounds. Auten was to permanently avoid overhead activity.

Celotex terminated Auten on June 2, 1989, after another employee with more seniority bid for—and bumped Auten out of—the janitorial position. The company's employee relations supervisor told Auten that there were no other positions available at the plant that complied with Weatherwax's restrictions. Celotex refused Auten's three attempts to bid for other positions at the plant because none of the jobs met these restrictions. Auten remains unemployed.

Auten filed a petition with the industrial commissioner, alleging that his May 1987 injury was work-related. Following a hearing, a deputy industrial commissioner awarded Auten 100% permanent total industrial disability benefits under Iowa Code section 85.34(3). The award order directed Celotex to pay Auten at the rate of $293.89 per week from September 7, 1987, for an indefinite period of time during Auten's period of disability.

Celotex appealed to the industrial commissioner, who affirmed the deputy's decision. The industrial commissioner concluded that if there is no change in Auten's condition, the benefits will continue for life.

As a preliminary matter, Auten contends Celotex failed to preserve error on the apportionment issue. In his resistance to Celotex's application for further review, Auten initially claims Celotex first raised the issue with the district court on judicial review. He later claims Celotex first raised the issue with us in the application for further review.

Our careful review of the record reveals that Celotex raised the issue with the deputy industrial commissioner and the industrial commissioner. Both considered and rejected the apportionment argument Celotex now urges upon us. Because the issue was preserved for our review, we move to a consideration of the merits.

Although the commissioner found that a considerable part of Auten's total disability is attributable to the two prior work-related injuries, he refused to apportion some part of the total disability to these injuries. In refusing to apportion, the commissioner relied on our rule that limits apportionment to

> those situations where a prior injury or illness, unrelated to the employment, independently produces some ascertainable portion of the ultimate industrial disability which exists following the employment-related aggravation.

*Varied Enters., Inc. v. Sumner,* 353 N.W.2d 407, 411 (Iowa 1984); *accord Bearce v. FMC Corp.,* 465 N.W.2d 531, 535 (Iowa 1991).

Celotex contends that this rule does not apply here because the extent of disability attributable to Auten's two prior work-related injuries is known. Auten, Celotex argues, was paid $27,000 for these injuries which

caused a substantial part of his permanent total industrial disability.

Like the court of appeals, we recognize that the earlier disability was established. This then presents the following narrow question: Because the two prior injuries were work-related, does that fact preclude apportionment? In *Tussing v. George A. Hormel & Co.*, 461 N.W.2d 450 (Iowa 1990), we squarely addressed this issue. The employee's prior injury was work-related. In addition, there was no evidence that the prior injury was producing industrial disability. For these two reasons, we held that the apportionment rule did not apply. *Id.* at 453.

Celotex does not directly respond to the fact that Auten's two prior injuries that resulted in industrial disability were work-related. Instead, Celotex argues that it is illogical and unjust to require it to compensate Auten for all of his disability when a part of it was related to these two prior injuries, injuries for which he has already been compensated. In effect, Celotex concludes, the commissioner's award results in a double recovery for Auten.

From a logic and fairness standpoint, Celotex's argument has some merit. To answer it, we need to explore the apportionment rule's development and the reasons for it.

In *Varied Enterprises, Inc.*, we relied heavily on Larson, *The Law of Workmen's Compensation*, in formulating our apportionment rule. *See Varied Enters., Inc.*, 353 N.W.2d at 411 (citing 2 Arthur Larson, *The Law of Workmen's Compensation* § 59.22, at 10–365 (1981)) (discussing the total effect of two successive injuries). So we need to start there.

Apart from statute, in a situation of two successive work-related injuries, "the employer is generally held liable for the entire disability resulting from the combination of the prior disability and the present injury." 2 Arthur Larson, *The Law of Workmen's Compensation* § 59.00, at 10–492.329 (1994) [hereinafter Larson].

Larson gives this reason for not crediting the employer for the disability award on the prior disability:

The capacities of a human being cannot be arbitrarily and finally divided and written off by percentages. The fact that a man has once received compensation as for 50 percent of total disability does not mean that ever after he is in the eyes of compensation law but half a man, so that he can never again receive a compensation award going beyond the other 50 percent of total. After having received his prior payments, he may, in future years, be able to resume gainful employment. In the words of the Colorado court, he may have resumed employment as a "working unit." If so, there is no reason why a disability which would bring anyone else total permanent disability benefits should yield him only half as much. A similar principle may be applied to an individual member that has been restored in whole or in part.

Larson, § 59.42(g)(3), at 10–594–599 (citation omitted). *See also Gray v. Carolina Freight Carriers, Inc.*, 105 N.C.App. 480, 484–85, 414 S.E.2d 102, 104–05 (1992) (employee suffered back injury for which he was awarded 10% permanent partial disability; employee suffered subsequent back injury for which he was awarded permanent total disability; court agreed with deputy commissioner's denial of credit for employer's earlier payment of 10% partial disability); *American Casualty Ins. Co. v. White*, 207 Tenn. 294, 299–301, 339 S.W.2d 15, 18–19 (1960) (employee suffered injury to arm which was rated at 25% permanent disability to the body as a whole; held that a prior back injury rated as 25% permanent disability to the body as a whole need not be considered because the award was not payment for a previously injured member of the body).

According to Larson,

[t]he successive-injury problem arises from the obvious fact that the combined effect of two physical disabilities is often far greater than would be reflected by merely adding together the schedule allowances for each injury existing separately. The loss of a leg, which would ordinarily mean only partial disability to a normal person, results in total disability to the man who has already, from whatever cause, lost the other leg.

There are three approaches to the resulting dilemma: first, the "full responsibility" rule, imposing liability for the entire resulting disability upon the employer; second, apportionment statutes, under which the employer pays only for the single member lost in his employment; and third, second injury funds, which ensure that the employee receives the full disability benefits but reimburses the employer for the difference between this sum and what he would pay under an apportionment statute.

Larson, § 59.10, at 10–492.329–.330.

The problem of apportionment of a compensable loss is encountered in three situations:

> between successive employers or carriers, when the final disability is traceable to exposures or incidents under two or more of them; between an employer and a Second Injury Fund, when a preexisting condition covered by the Fund is involved; and between an employer and the employee himself, when a prior personal disability contributes to the final disability result.

*Id.* § 59.20, at 10–492.337–.339. In the first two situations, the employee is assured of full benefits from someone; the only question is who will pay. In the third situation, "the injured worker faces the possibility of having to bear a substantial portion of the final loss himself." *Id.* § 59.20, at 10–492.340.

The problem in the third situation does not arise in a majority of states because such states have no apportionment statutes covering successive work-related injuries. States having such apportionment statutes allow an employee with a prior disability to recover for subsequent disability only what the employee would have been entitled to for the latter disability considered alone. *Id.* § 59.21, at 10–492.340. As Larson notes, "[t]he apparent harshness of this rule has been softened in most of the principle states having such statutes by an exception for cases coming within Second Injury Fund provisions." *Id.* § 59.21, at 10–492.357–.358. But, for example, in a state having both an apportionment statute and no Second Injury Fund, an employee losing a second eye will receive only the scheduled value of a single

eye. *Id.* § 59.21, at 10–492.359. In this example the employee, rather than the employer, bears a substantial portion of the final loss.

According to Larson, courts "have generally tempered the harshness of apportionment statutes whenever a doubt could be resolved in the direction of constricting their scope." *Id.* Even where states have no apportionment statutes, courts have tried to limit the impact of apportionment on employees:

> Apart from special statute, apportionable "disability" does not include a prior nondisabling defect or disease that contributes to the end result. Nothing is better established in compensation law than the rule that, when industrial injury precipitates disability from a latent prior condition, such as heart disease, cancer, back weakness and the like, the entire disability is compensable. . . .
>
> . . . .
>
> The essential distinction at stake here is between a preexisting disability that independently produces all or part of the final disability, and a preexisting condition that in some way combines with or is acted upon by the industrial injury.

*Id.* § 59.22(a), at 10–492.361; § 59.22(b), at 10–492.389. *See Rose v. John Deere Ottumwa Works,* 247 Iowa 900, 908, 76 N.W.2d 756, 760–61 (1956) (although Iowa workers' compensation law allows no compensation for results of preexisting condition, claimant is to be compensated for disability resulting from aggravation of preexisting condition because of work-related injury).

In *Varied Enterprises, Inc.,* we relied on the above quote from Larson in formulating our apportionment rule that limits apportionment to

> those situations where a prior injury or illness, *unrelated to the employment,* independently produces some ascertainable portion of the ultimate industrial disability which exists following the employment-related aggravation.

*Varied Enters., Inc.,* 353 N.W.2d at 411 (emphasis added). Implicit in our qualifying language "unrelated to the employment" is our recognition of the following general rule:

Apart from statute, in a situation of two successive work-related injuries, the employer is generally held liable for the entire disability resulting from the combination of the prior disability and the present injury.

Our workers' compensation law does allow the employer credit in certain situations not relevant here. *See, e.g.,* Iowa Code §§ 85.34 (employer entitled to credit for weekly healing period benefits for the same injury producing permanent partial disability); 85.34(3) (employer entitled to credit for permanent partial disability payments made where employee sustains permanent partial disability and permanent total disability arising from same injury); 85.34(4) (employer entitled to credit for specific benefit amounts paid in excess of amounts required by workers' compensation statutes). However, our workers' compensation law does not expressly provide for apportionment in the case of successive injuries sustained by an employee in the same employment, regardless of whether or not the employee receives compensation for the prior injury.

Moreover, neither party, for good reason, claims that our second injury provisions apply. The injuries here do not involve the loss or loss of use of a hand, arm, foot, leg, or eye. *See* Iowa Code § 85.64; *Second Injury Fund v. Shank,* 516 N.W.2d 808, 812 (Iowa 1994) (second injury fund provisions apply only if employee has (1) either lost, or lost use of a hand, arm, foot, leg, or eye; (2) employee sustained loss, or loss of use of another such member or an organ through a work-related injury; and (3) there must be some permanent disability from the injuries).

That leaves us with this question: Should we here, by judicial fiat, allow apportionment with respect to successive work-related injuries and thereby give the employer a credit for the prior disability award? We decline to do so for the reasons that follow.

The legislature stopped short of allowing apportionment as to all successive work-related injuries. *See* Iowa Code § 85.36(10)(c). Section 85.36(10)(c) allows apportionment as to any employee who is disabled and receiving workers' compensation benefits when the employee is again injured on the job. Those are not the facts here. Auten was not receiving workers' compensation benefits when he was injured in 1987. He last received such benefits in 1984. The legislature has also allowed the employer a credit for a prior disability award where the employee suffered a permanent partial disability and total disability from the same injury. *See* Iowa Code § 85.34(3). So had the legislature intended to allow apportionment as to *all* successive work-related injuries, it could easily have said so. Because it did not, we think the legislature did not intend to allow apportionment under the facts of this case. The result we reach is in keeping with our fundamental rule of construing our workers' compensation law in favor of the employee and compensability. *Bearce,* 465 N.W.2d at 536. *See also Gray,* 105 N.C.App. 480, 414 S.E.2d 102 (reaching same result on similar facts and reasoning); *American Casualty Ins. Co.,* 207 Tenn. 294, 339 S.W.2d 15 (same).

The industrial commissioner correctly refused to apportion a part of Auten's permanent total disability to his two prior work-related injuries. Because the district court and court of appeals were likewise correct in affirming the commissioner's decision on this issue, we affirm.

**DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.**