**EXCEL CORPORATION, Appellee,**

v.

**Joseph E. SMITHART, Appellant.**

No. 01–0702.

Supreme Court of Iowa.

Dec. 18, 2002.

Dennis W. Emanuel of Webber, Gaumer & Emanuel, P.C., Ottumwa, and Anne L. Clark of Hopkins & Huebner, P.C., Des Moines, for appellant.

Dorothy L. Kelley, Des Moines, for appellee.

CADY, Justice.

In this workers' compensation appeal, we are asked to revisit our rule governing apportionment of disability resulting from multiple work injuries, and our rule governing employer accommodations in determining industrial disability. The workers' compensation commissioner awarded benefits to the worker based on a finding of two separate injuries to the same area of the body, refused to apportion the resulting disability, and refused to consider accommodations made by the employer following the injuries. Our review follows review by the district court and the court of appeals. We vacate the decision of the court of appeals, reverse the decision of the district court, and remand the case to the workers' compensation commissioner for further proceedings consistent with this opinion.

## I. Background Facts and Proceedings.

Joseph Smithart began working for Excel Corporation in Ottumwa, Iowa, in 1989. He worked as a laborer, and held a number of different jobs for the company over the years. Smithart performed unskilled manual labor for a variety of other employers prior to his employment with Excel. He was born in 1951 and left school after the ninth grade. Standard intelligence tests showed Smithart functions within the borderline range of mental retardation.

Smithart sustained a number of injuries while working at Excel. Most of the injuries were to his lower back, but he was able to return to work after each episode.

One of the back injuries occurred on November 30, 1995, while Smithart was lifting boxes of meat. He returned to work shortly after the injury, with a fifty pound lifting restriction imposed by his doctor.

Smithart also hurt his back on May 6, 1997, again while lifting boxes. Following this incident, his doctor imposed a twenty-five pound lifting restriction. Medical treatment for his back injuries over the period of his employment has essentially been limited to the administration of pain medication, such as aspirin. He has never had surgery on his back.

Smithart filed nine workers' compensation claims for benefits based on the injuries to his back. One claim was filed on

October 13, 1997, based on his November 30, 1995, injury. He also filed a claim on May 4, 1999, based on the May 6, 1997, incident.

A consolidated hearing on the claims revealed Smithart continued to work at Excel despite his back injuries. Excel always provided him with jobs within his lifting restrictions, and Smithart rarely missed any work, even after the injuries. Medical tests indicated the presence of degenerative disc disease in his back, with a possible herniated disc. One medical doctor gave Smithart a permanent impairment rating of five percent, while another doctor gave him a permanent rating of eight percent.

The workers' compensation commissioner found Smithart sustained an industrial disability of twenty percent as a result of the November 1995 injury. The commissioner also found Smithart sustained a separate injury in May 1997, supported by the enhanced lifting restriction, resulting in an industrial disability of forty percent. The separate injuries were found to be a part of an ongoing cumulative injury. The commissioner dismissed the remaining seven claims. The commissioner found Smithart failed to prove an injury was sustained in six of the claims, and failed to establish a permanent disability in the remaining claim.

The commissioner refused to consider the efforts by Excel to accommodate Smithart's lifting restrictions in determining the industrial disability. Additionally, the commissioner refused to apportion the two disabilities. Consequently, Smithart was awarded one hundred weeks of permanent partial disability benefits for the 1995 injury. In addition, he was awarded 200 weeks of permanent partial disability benefits for the 1997 injury. The benefits were made retroactive to the date of injury, and Excel was directed to pay all accrued amounts in a lump sum with interest.

Excel filed a petition for judicial review. In its review of the case, the district court reversed the decision of the commissioner. The district court found there was no substantial evidence in the record to support an industrial disability of twenty percent for the 1995 injury, and no substantial evidence to support two separate cumulative injuries. The district court further found no substantial evidence to support a total industrial disability of forty percent. Because of these findings, the district court determined it was unnecessary to address the issue whether the disability awards should have been apportioned.

Smithart filed an appeal from the district court decision, and we transferred the case to the court of appeals. The court of appeals reversed the decision of the district court and affirmed the decision of the commissioner. We granted further review.

On further review, Excel claims substantial evidence was lacking to support an award of twenty percent disability for the first cumulative injury and forty percent disability for the second cumulative injury. In support of this claim, Excel points out that Smithart continued to work at Excel at a regular job despite his back problems, and the reduction in his lifting restriction from fifty pounds to twenty-five pounds in 1997 was not based on his permanent inability to lift the greater weight but was a precautionary measure to avoid aggravating his back condition in the future. Excel further argues there was no substantial evidence to support two distinct and discrete disabilities, only evidence of a single degenerative process that was aggravated by the 1997 incident.

Excel also claims that, in the event the two separate awards stand, Iowa Code section 85.36(9)(c) (1997) requires they be ap-

portioned because the two benefit periods overlap. The court of appeals acknowledged an overlap in the benefits, but held that the apportionment under section 85.36(9)(c) only applies when the first injury is not work-related. Excel asserts that the failure to apportion the disabilities resulted in double recovery, and provides a disincentive for employers to reemploy a disabled employee following an injury. Finally, Excel asserts that the failure to consider employer accommodations in determining the amount of an industrial disability punishes employers for their efforts to keep disabled employees employed, and provides a disincentive for an employer to accommodate disabled workers, which ultimately harms the worker.

## II. Standard of Review.

■ An appeal from a district court decision on judicial review of an agency decision " 'is limited to determining whether the district court correctly applied the law in exercising its [review]' " under Iowa Code section 17A.19(8) (1997). *Herrera v. IBP, Inc.*, 633 N.W.2d 284, 287 (Iowa 2001) (citation omitted). We are " 'bound by the commissioner's factual findings if they are supported by substantial evidence in the record.' " *IBP, Inc. v. Harpole*, 621 N.W.2d 410, 414 (Iowa 2001) (citation omitted).

## III. Background of Governing Legal Theories.

Before addressing specific issues raised on appeal, we will review the underlying legal theories driving the central dispute presented on appeal. The parties do not dispute that Smithart sustained a work-related injury resulting in disability, and that compensation is due. The disagreement concerns the amount of disability and whether the disability resulted from a single injury or two separate and discrete cumulative injuries. The dispute over the number and nature of the injuries arises because the amount of compensation can vary dramatically depending on whether a disability results from a single injury or from two separate injuries. The reason for the difference in the amount of compensation relates to the impact of the "cumulative injury rule" and the "full-responsibility rule." We first examine these two rules and then consider their impact on the issues presented on appeal.

■ We first recognized the "cumulative injury rule" in *McKeever Custom Cabinets v. Smith*, 379 N.W.2d 368, 373–74 (Iowa 1985). In *McKeever*, a worker developed a gradual injury to his wrist from a series of work activities beginning when he commenced employment. There was no single disabling injury, but the condition eventually caused the worker to quit his employment three years later. He then filed a report of injury and instituted a workers' compensation claim a few months later. The employer argued that the claim was not filed within the two-year statutory period of limitations because the work activity that first gave rise to the injury began when he started his employment. We rejected the argument and adopted a rule that the injury in such a case does not occur until the disability is apparent, such as that time when it prevents the employee from working. *McKeever*, 379 N.W.2d at 374; *see also Ellingson v. Fleetguard, Inc.*, 599 N.W.2d 440, 444 (1999). In doing so, we recognized that workers' compensation liability was not confined to disabilities arising from accidents, but includes disabilities which gradually develop "over a period of time." *McKeever*, 379 N.W.2d at 373. This principle is known as the "cumulative injury rule." As subsequently developed by other cases, it simply means that when a worker develops a disability over time from work activities, the compensable injury itself occurs when the claimant becomes

aware "he or she suffers from a condition or injury" and such "condition or injury was caused by the claimant's employment." *Herrera,* 633 N.W.2d at 288. It is also known as the "gradual injury rule." *McKeever,* 379 N.W.2d at 373.

▬ We have also adopted what we call the "full-responsibility rule." *See Second Injury Fund v. Nelson,* 544 N.W.2d 258, 265 (Iowa 1995). This rule provides, "[w]hen there are two successive *work-related* injuries, the employer liable for the second injury 'is generally held liable for the entire disability resulting from the combination of the prior disability and the present injury.'" *Id.* (quoting *Celotex Corp. v. Auten,* 541 N.W.2d 252, 254 (Iowa 1995)). This rule is actually another way of describing our general rule governing apportionment of disability in workers' compensation proceedings. *See generally Celotex Corp.,* 541 N.W.2d at 254. Absent a statute, we generally do not apportion the disability of two successive work-related injuries.[1] *Id.*

▬ These two rules have no doctrinal relationship, but converge to produce different amounts of compensation in those cases where disability results from work-related injuries or conditions to the same area of the body during the course of employment.[2] Generally, the full-responsibility rule means a worker will receive greater total compensation for such an injury if the disability results from two separate injuries causing disability as opposed to a single cumulative injury, or the aggravation of a prior work-injury. *See Floyd v. Quaker Oats,* 646 N.W.2d 105, 108–09 (Iowa 2002).

For example, if a worker sustains a back injury resulting in a permanent partial disability of twenty percent and later, after returning to work, sustains a second separate back injury resulting in a permanent partial disability of forty percent, the worker is entitled to be compensated for the forty percent disability based on the second injury even though the worker has previously received compensation for the twenty percent disability. Although the worker has a forty percent disability, the worker actually receives a total disability award between the two disabilities of sixty percent.

▬ On the other hand, if multiple injuries to a single area of the body are considered to be cumulative in nature, the employer is only required to pay compensation based on the disability resulting from the cumulative injury.[3] In this situation, the compensation is based on the percentage of disability at the time of the cumulative injury.

---

1. Subject to some limitations, our apportionment rule does permit apportionment between a disability caused by a work-related injury and a disability caused by a prior non-work-related condition or injury. *Second Injury Fund v. Nelson,* 544 N.W.2d 258, 264 (Iowa 1995). In a situation of that type, "[t]he employer is liable only for the work-related portion" of the disability. *Id.* One of the limitations under this rule is that apportionment does not apply if the second injury merely "aggravates the preexisting condition." *Id.* at 265. If there is an aggravation, "the employer is liable for the full industrial disability." *Id.*

2. Our discussion of these rules is limited to body-as-a-whole disability, and does not include scheduled-member disability. *See Floyd v. Quaker Oats,* 646 N.W.2d 105, 109–10 (Iowa 2002).

3. The same result occurs in those cases involving an aggravation of a prior condition or disability. When a prior injury has been compensated and the condition is subsequently aggravated so that the disability increases, the worker is entitled to be compensated but only to the extent of the increased disability. *Floyd,* 646 N.W.2d at 108–09. This can be done in a review reopening proceeding or in an original arbitration proceeding. *Id.*

In *Ellingson,* we acknowledged that one benefit to a worker who establishes two separate injuries, as opposed to a subsequent aggravation of a prior injury, is that the second injury claim is compensated using current wages, which will normally provide a higher wage base and result in greater compensation to the worker. *See Ellingson,* 599 N.W.2d at 444. The present case, however, illustrates even a greater benefit to a worker who establishes two separate injuries, as opposed to a single cumulative injury or an aggravation of a prior injury. If a cumulative injury is established, the employer only pays compensation based on the disability resulting from that single injury. In such a case, the full-responsibility rule does not apply, and the claimant is compensated for the amount of the resulting disability. However, if two separate injuries are established or if two separate cumulative injuries are established, compensation is based on the existence of the two separate disabilities, both of which are recoverable under the full-responsibility rule, unless otherwise provided by statute.

Excel forcefully argues that the rule against apportionment of disability resulting from separate and discrete injuries to the same portion of the body permits a worker to piecemeal a chronic work-related condition to a single area of the body in such a manner that the worker will eventually be awarded benefits for a disability that could exceed one hundred percent of the whole body. As applied to this case, Excel argues it is unfair to be required to pay out total benefits equal to a sixty percent disability to Smithart when he has only sustained a forty percent disability. Excel adumbrates that such a result will become a powerful disincentive for employers to re-employ injured workers.

We explained the rationale for the full-responsibility rule in *Celotex. Celotex Corp.,* 541 N.W.2d at 254–55. Essentially,

it is built on the concept that an industrial disability is not a final indicator of the degree to which a worker can use his or her body to earn wages, and it does not consider the human capacity and spirit to overcome a disability through rehabilitation, adjustments, simple perseverance, or other methods. *See id.* Thus, regardless of the disability sustained, a worker who returns to work does so as a "working unit." *Id.* If the worker has resumed employment for the employer by performing the assigned work, there is no reason to treat the worker as disabled in the event a second disabling injury is sustained. Thus, an employer receives no credit or apportionment for the previous compensation paid.

██ The perceived unfairness articulated by Excel not only ignores this "working unit" rationale for the rule against apportionment of successive work-related injuries, but also overlooks the predicate requirement for the full-responsibility rule that each injury resulting in increased disability be separate and discrete. *See Floyd,* 646 N.W.2d at 109; *Ellingson,* 599 N.W.2d at 444–45. The separate and discrete requirement prevents a worker from transforming a chronic condition into multiple injuries, and obtaining the multiple separate recoveries feared by Excel. Thus, employers are protected against paying for the prior disability over and over by the separate and discrete requirement.

██ Additionally, the distinction between the manner in which compensation is awarded for a single cumulative injury to an area of the body and two separate and discrete injuries to the same area has been partially diffused by section 85.36(9)(c). This section alters our apportionment rule, in some instances, by providing, in relevant part:

In computing the compensation to be paid to any employee who, before the accident for which the employee claims compensation, was disabled and drawing compensation under the provisions of this chapter, the compensation for each subsequent injury shall be apportioned according to the proportion of disability caused by the respective injuries which the employee shall have suffered . . . .

Iowa Code § 85.36(9)(c). Thus, apportionment of disability between two work-related injuries is statutorily permitted when the worker is "disabled and drawing compensation" at the time of the "accident for which the employee claims compensation." *Id.*

In this case, the industrial commissioner found Smithart suffered two separate disabilities, and Excel challenges the evidence to support this finding. Before addressing this question, however, we observe that the benefit to the worker of basing a claim for compensation on two separate injuries, as opposed to one cumulative or gradual injury, must be considered in light of the legislative exception to the full-responsibility rule. If this limitation applies in this case, the impact of the distinction between the existence of a single injury or separate injuries is diminished.

The exception to the full-responsibility rule carved out by our legislature in section 85.36(9)(c) applies in those cases where a worker makes a claim for a work activity injury but was "disabled and drawing compensation" based on a prior injury at the time of the accident giving rise to the claim. The same "working unit" rationale that supports the full-responsibility rule likely supports the statutory exception. If a worker was disabled from a prior injury and still receiving benefits for that prior injury, the worker has not yet, in theory, resumed employment as a "working unit." Thus, when two injuries occur too close in time, it is the apparent judgment of our legislature that the worker loses his or her entitlement to two separate compensable disabilities and may only recover compensation for the total disability as a result of both injuries.

We recognize section 85.36(9)(c) applies only when the employee is "disabled and drawing compensation" for the first injury at the time of the second injury subject to the compensation claim. Of course, Smithart was not actually receiving compensation at the time of the second injury in this case because the first claim had not yet been adjudicated. Nevertheless, compensation awards are made retroactive to the date of injury and we apply the statute in the same manner. Moreover, the rationale for apportionment of disability applies to either situation. The worker was disabled at the time of the second injury and the second injury occurred before the compensation period for the disability ended.

Nevertheless, the court of appeals held that section 85.36(9)(c) did not apply to this case based on the theory that apportionment takes place only when the prior injury is unrelated to employment. Thus, it reasoned that any statute providing for apportionment is also limited to cases where the prior injury is unrelated to employment. This approach, however, misreads our prior cases.

In developing what we have now labeled as the full-responsibility rule, we made an exception in those cases "where a prior injury or illness, *unrelated to the employment,* independently produces some ascertainable portion of the ultimate industrial disability" following a second injury. *Celotex,* 541 N.W.2d at 255. Thus, we permit apportionment where the prior injury was "'unrelated to the employment.'" *Tussing v. George A. Hormel & Co.,* 461 N.W.2d 450, 453 (Iowa 1990) (citation omitted). This was a judicially created restriction to

the application of the rule. Yet, our legislature created its own exception in those cases where disabilities overlap. This exception stands on its own, and is not affected by our exception involving prior injuries unrelated to employment. Accordingly, whether or not the injury in this case is a cumulative injury, an aggravation of a prior injury, or two separate and distinct injuries, Smithart cannot be compensated for more than his ultimate percentage of disability because his periods of disability overlap. The major dispute between the parties, therefore, loses much of its fight, and is reduced to a determination over the base wage to use in calculating benefits. We now turn to the issues presented.

## IV. Substantial Evidence.

The standard that must be met to establish two separate work-related injuries requires a claimant to demonstrate a distinct and discrete "disability attributable to ... work activities" that occurs after an initial injury. *Ellingson*, 599 N.W.2d at 444. It is not enough for the worker to show disability has been increased by subsequent work activities. *Id.* These circumstances may serve to increase the disability attributable to the first injury, but do not establish a separate and discrete disability. *Id.* To establish a separate injury claim, the subsequent condition of the claimant must not be a consequence of the first injury. *See id.*

Smithart chose to establish separate multiple injuries, as opposed to a single cumulative injury. The workers' compensation commissioner found the existence of two separate injuries, and we must review each finding of a separate injury. Under our standard of review, substantial evidence supports the finding of an injury sustained on November 30, 1995, resulting in a disability. Smithart experienced a work-related injury to his back and the injury resulted in the imposition of a permanent lifting restriction.

On the other hand, the only evidence of a separate and discrete injury in this case following the November 30, 1995, injury was the report made by Smithart that his back became sore on May 6, 1997, after lifting boxes, and that his lifting restriction was subsequently reduced from fifty pounds to approximately twenty-five pounds. The commissioner specifically found the disability from the May 6, 1997, incident was manifested by the "change in activity restrictions." There was no other medical evidence suggesting a discrete injury.

Under our standard of review, we cannot conclude there was substantial evidence to support a finding of two separate and discrete disabilities. If a claimant establishes the existence of an initial disability based on an injury to the lower back resulting in the imposition of a lifting restriction, the mere subsequent imposition of a greater lifting restriction could indicate either a separate and discrete injury or an increase in the disability caused by aggravating work activities. However, a greater lifting restriction is alone insufficient to support the source of disability. Smithart either increased his disability by engaging in subsequent aggravating work activities or suffered a distinct and discrete injury. However, evidence of increased lifting restrictions is insufficient and does not alone support one finding over the other. The claimant has the burden of proof and Smithart failed to sustain his burden of establishing a separate and discrete injury following the initial injury.

On the other hand, we find substantial evidence to support a finding that Smithart suffered an increased permanent partial disability that led to an industrial disability of forty percent. Industrial disability means a reduction in earning capacity. Many factors are considered including "functional impairment,

age, intelligence, education, qualifications, experience, and the ability of the employee to engage in [suitable employment]." *Second Injury Fund*, 544 N.W.2d at 265–66. Considering the type of employment Smithart is suited to engage in, as well as his lifting restrictions and functional impairment, we conclude substantial evidence supports a finding of industrial disability of twenty percent based on the 1995 injury which later increased to forty percent based on subsequent aggravating work activities. We reject the suggestion by Excel that the lifting restriction was improperly considered as a factor in determining industrial disability. We find no significant distinction between a lifting restriction based on a worker's physical inability to lift greater weight and a restriction imposed to prevent the reoccurrence of an existing injury. In both cases, the impact on the worker is the same.

## V. Accommodation.

Excel asserts we should modify our accommodation rule to allow accommodations made by employers to be considered in determining industrial disability. Excel claims the current rule does not provide an incentive for employers to accommodate disabled workers.

We follow the rule that an employer's accommodation of an employee's work restrictions may be considered in determining industrial disability only if the accommodation is available to the general labor market. *Ellingson*, 599 N.W.2d at 445 (citing *Murillo v. Blackhawk Foundry*, 571 N.W.2d 16, 18–19 (Iowa 1997)). Otherwise, industrial disability "must be based on the injured worker's present ability to earn in the competitive job market without regard to any accommodation" furnished by the employer. *Id.* This is also the rule followed in many other states. · *Murillo*, 571 N.W.2d at 18.

Although our rules in the area of workers' compensation should not . discourage employers from employing workers with disabilities, our accommodation rule exists to properly measure the extent of industrial disability suffered by a worker. The purpose of the rule was not to benefit the employer. To the extent the accommodation rule may motivate a particular employer not to provide an accommodation to a disabled worker because the employer receives no reward for doing so in terms of a reduced compensation payment in the event the employee suffers another injury producing a disability, we find the greater goal of the rule is served by providing workers full compensation. Moreover, employers receive other benefits by accommodating those employees who become disabled while performing work for the employer beyond any direct financial gain. In a broad .sense, employee accommodations made by employers are an expression of the employer's true commitment to its work force, which often instills a corresponding commitment by employees to the employer that provides immeasurable and tangible benefits. This is the value to the employer. We refuse to alter our accommodation rule.

## VI. Conclusion.

We conclude substantial evidence exists to support the finding made by the workers' compensation commissioner that Smithart sustained a work-related injury on November 30, 1995. There is also substantial evidence to support the finding that this injury resulted in a twenty percent industrial disability. However, substantial evidence does not exist to support a finding of a second separate and discrete injury on May 6, 1997, but does support a finding that the prior condition was aggravated after November 30, 1995, resulting in an industrial disability of forty percent. We reverse the decision of the district

court, vacate the decision of the court of appeals, and remand the case to the workers' compensation commissioner to determine the amount of compensation consistent with this opinion.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED; CASE REMANDED TO WORKERS' COMPENSATION COMMISSIONER.**

All justices concur except NEUMAN, J., who concurs in result only.