# IN THE SUPREME COURT OF IOWA

No. 13–1009

Filed April 3, 2015

**ROBERTS DAIRY** and **CRAWFORD & COMPANY,**

Appellees,

vs.

**GRADY BILLICK,**

Appellant.

Appeal from the Iowa District Court for Polk County, Christopher L. McDonald, Judge.

A workers' compensation claimant appeals the district court's ruling on judicial review of a decision of the Iowa Workers' Compensation Commissioner. **REVERSED AND REMANDED WITH INSTRUCTIONS.**

Thomas J. Currie of Currie & Liabo Law Firm, P.L.C., Cedar Rapids, for appellant.

Stephen W. Spencer and Joseph M. Barron of Peddicord, Wharton, Spencer, Hook, Barron & Wegman, L.L.P., West Des Moines, for appellees.

**HECHT, Justice.**

An employee sought workers' compensation benefits for a series of work-related injuries. His current employer contends its liability for industrial disability benefits must be apportioned because the employee previously suffered disability as a consequence of two separate injuries sustained while working for other employers. The workers' compensation commissioner concluded apportionment of industrial disability is not mandated by law under the circumstances of this case. On judicial review, the district court concluded the commissioner's decision was based on a misinterpretation of amendments to our workers' compensation statutes passed in 2004. The district court reversed the commissioner's decision and remanded the case to the agency for further findings relevant to the apportionment issue. Finding no error in the commissioner's interpretation of the relevant statutes, we reverse the district court's ruling and remand with instructions.

## I. Background Facts and Proceedings.

The following facts are supported by substantial evidence in the agency record for this case. In 1985, Grady Billick sustained a back injury while working for Squealer Feed Company in Iowa. He later settled his workers' compensation claim against that company for payment based on an eighty-five percent industrial disability.

In 1993, Billick was again injured while working for Milky Way Transport. On that occasion, he lost control of a tanker truck he was driving in inclement weather. The truck crashed and Billick sustained injuries to his head, neck, left shoulder, ribs, back, and left arm. His workers' compensation claim for these injuries was settled under Missouri law for an amount representing 18.5% permanent partial disability of the body as a whole.

Billick began working for Roberts Dairy (Roberts) in 2001. The employment required Billick to drive a semi-truck and deliver milk products from Iowa City to various retail stores across the state. The trucks were generally loaded by others, but Billick was required to unload them himself upon arrival at points of delivery.

Billick suffered four work-related injuries while working for Roberts. In March 2004, a dolly carrying milk crates struck Billick's left ankle and trapped it against a dock plate. Despite treatment, including an arthroscopic surgery, Billick was left with permanent impairment and experiences residual pain and swelling in his left lower extremity.

In June 2004, shelving in a Wal-Mart store collapsed while Billick was making a delivery there for Roberts. The shelving struck Billick's head, neck, and left shoulder, and knocked him to the ground. He received treatment for left shoulder and neck pain which led to shoulder surgery. Billick was assigned a partial permanent physical impairment rating for this injury.

In 2006, rusty bolts on a trailer strap came loose when Billick used the strap while pulling a truck door shut. He lost his balance, fell out of the truck, and injured his left arm and elbow. An MRI study performed on the day of this injury revealed a thoracic compression fracture. Billick lost no work as a consequence of this injury.

In 2007, a misaligned loading dock at a store in Altoona caused several milk crates to fall off a dolly. The crates struck Billick in the chest and shoulder. While driving back to Iowa City after sustaining this injury in Altoona, another vehicle's erratic movement caused Billick to steer his truck off the road. The emotional trauma resulting from the near-crash combined with and superimposed on the chest injury he

suffered earlier that day made Billick quite distraught and produced a physical–mental injury.

Billick filed four workers' compensation petitions against Roberts. The claims were consolidated for hearing. The commissioner's appeal decision awarded Billick healing period benefits for various periods of temporary total disability, permanent partial disability benefits for a loss of twelve percent of his left lower extremity, and permanent partial disability benefits for the loss of thirty-five percent of his earning capacity for the unscheduled components of injury.

The commissioner rejected Roberts's contention that its liability for Billick's industrial disability should be apportioned because Billick was previously compensated for his losses of earning capacity arising from the 1985 and 1993 injuries through settlements in Iowa with Squealer Feed and with Milky Way in Missouri. Both parties sought judicial review of the commissioner's appeal decision.

Although the parties' petitions for judicial review challenged—and the district court's decision addressed—numerous aspects of the agency decision, the only issue before us on appeal is whether the commissioner's ruling on the apportionment issue based upon his interpretation of the legislature's 2004 amendments to Iowa Code chapter 85 was correct. The district court concluded the commissioner misapprehended the relevant statutes and therefore reversed and remanded the case to the agency for further findings of fact relevant to the apportionment issue.

Billick appeals from the district court's decision on judicial review. We retained the appeal to interpret the 2004 amendments and decide whether the commissioner erred in concluding Roberts's liability for

permanent partial disability benefits cannot be apportioned under the circumstances of this case.

## II. Scope of Review.

"Iowa Code chapter 17A governs judicial review of the decisions of the workers' compensation commissioner." *Mycogen Seeds v. Sands*, 686 N.W.2d 457, 463 (Iowa 2004). Under chapter 17A, we are free to substitute our own interpretation of statutes "whose interpretation[s] ha[ve] not clearly been vested" in the agency. Iowa Code § 17A.19(10)(*c*) (2007); *see also Mycogen Seeds*, 686 N.W.2d at 464. To determine whether the legislature clearly vested an agency with authority to interpret particular statutes, we consider "the phrases or statutory provisions to be interpreted, their context, the purpose of the statute, and other practical considerations . . . as well as the functions of and duties imposed on the agency." *Renda v. Iowa Civil Rights Comm'n*, 784 N.W.2d 8, 11–12 (Iowa 2010).

The legislature has not expressly granted the commissioner the power to interpret Iowa Code sections 85.34(2)(*u*) and (7)(*a*)—the statutes at issue in this case. It *has* "granted to the commissioner the authority to '[a]dopt and enforce rules necessary to implement' chapters 85, 85A, 85B, 86 and 87." *Waldinger Corp. v. Mettler*, 817 N.W.2d 1, 5 (Iowa 2012) (alteration in original) (quoting Iowa Code § 86.8(1)(*a*) (2011)). However, standing alone this does "not constitute a clear vesting of interpretive authority." *Id.* at 7. Sections 85.34(2)(*u*) and (7)(*a*) leave undefined several terms and phrases bearing on this case, such as "earning capacity" and "preexisting disability." *See* Iowa Code §§ 85.34(2)(*u*), (7)(*a*) (2007). The presence of undefined terms and phrases in these sections suggests the legislature did not clearly vest the

agency with authority to interpret those terms and phrases. *See Waldinger Corp.*, 817 N.W.2d at 7.

We conclude the legislature did not clearly vest the commissioner with authority to interpret the subsections of Iowa Code section 85.34 at issue in this case. "Accordingly, our review of the commissioner's interpretation . . . is for correction of errors at law." *Id.*

### III.  The Parties' Positions.

Billick asserts the district court erred in reversing the commissioner's determination that Roberts is not, as a matter of law, entitled to apportionment under the circumstances presented here. He contends the commissioner correctly concluded the 2004 amendments to Iowa Code section 85.34 did not modify the fresh-start rule for an industrial disability claim made by a claimant who was previously compensated for a loss of earning capacity suffered as a consequence of an unscheduled injury that occurred while working in the course and scope of employment for a different employer. Billick contends an interpretation of section 85.34 allowing Roberts a credit for any disability compensated by previous employers would inflict upon him an unwarranted reduction in benefits not intended by the legislature when it amended the Iowa Workers' Compensation Act in 2004. Further, Billick suggests the district court's interpretation of the 2004 amendments circumvents the fundamental purpose and intent of Iowa Code chapter 85—which is to benefit injured workers and their dependents. *See McSpadden v. Big Ben Coal Co.*, 288 N.W.2d 181, 188 (Iowa 1980).

Conversely, Roberts asserts the commissioner's interpretation of the 2004 amendments contravenes the legislature's clearly stated purpose underlying the enactments and would allow Billick a double recovery for his consecutive losses of earning capacity. *See* 2004 Iowa

Acts 1st Extraordinary Sess. ch. 1001, § 20. Roberts contends the legislature's 2004 amendments were intended to abrogate the concept of full responsibility by specifically indicating employers will not be held responsible for disability sustained through a prior work injury. Roberts further contends the commissioner erred in denying it credit for 425 weeks of permanent partial disability benefits paid by Billick's prior employers. Accordingly, Roberts requests that we affirm the district court's ruling remanding this case to the commissioner for new findings on the extent of Billick's loss of earning capacity.

**IV. Analysis.**

**A. Law Antedating the 2004 Amendments.** The resolution of the issue presented for our decision turns on the legal effect of the legislature's 2004 amendments to Iowa Code section 85.34. Because the legislature expressly intended the amendments to "modif[y] the fresh start and full responsibility rules of law announced by the Iowa [S]upreme [C]ourt in a series of judicial precedents," 2004 Iowa Acts 1st Extraordinary Sess. ch. 1001, § 20, our analysis begins with an overview of those rules as they had been previously applied.

1. *The fresh-start rule.* The fresh-start rule is a theoretical construct presuming that when an employee who has sustained a work-related injury resulting in permanent partial industrial disability begins employment with a new employer, the employee enjoys a renewed earning capacity. A preeminent workers' compensation treatise explains the reasoning behind this rule:

> The capacities of a human being cannot be arbitrarily and finally divided and written off by percentages. The fact that a person has once received compensation . . . for 50 percent of total disability does not mean that ever after he or she is in the eyes of compensation law but half a person, never again entitled to receive a compensation award going

beyond the other 50 percent of total. After having received the prior payments, he or she may, in future years, be able to resume gainful employment. . . . If so, there is no reason why a disability which would bring anyone else total permanent disability benefits should yield that person only half as much.

8 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 92.02[7][c], at 92-10 (rev. ed. 2014); *see also Ziegler v. U.S. Gypsum Co.*, 252 Iowa 613, 620, 106 N.W.2d 591, 595 (1960) ("It is . . . well settled that when an employee is hired, the employer takes him subject to any active or dormant health impairments incurred prior to this employment."). Under the fresh-start rule, if the employee sustains a new work-related injury after commencing work for a new employer, any resulting loss of earning capacity is measured as a diminution of the new, complete earning capacity that existed at the time the employment with the new employer commenced.

2. *The full-responsibility rule.* The full-responsibility rule is a functional corollary of the fresh-start rule. *Floyd v. Quaker Oats*, 646 N.W.2d 105, 110 (Iowa 2002) (noting our decision in *Celotex Corp. v. Auten*, 541 N.W.2d 252 (Iowa 1995), "was a recognition . . . that application of the full-responsibility rule in body-as-a-whole disability situations is *based on the premise of a fresh start* with respect to industrial disability" (emphasis added)). "When there are two successive *work-related* [unscheduled] injuries, the employer liable for the second injury 'is generally held liable for the entire disability resulting from the combination of the prior disability and the present injury.'" *Second Injury Fund v. Nelson*, 544 N.W.2d 258, 265 (Iowa 1995) (quoting *Celotex Corp.*, 541 N.W.2d at 254).

3. Venegas v. IBP. The practical consequence of the employee's fresh start and the successor employer's full responsibility in the context

of successive unscheduled injuries before the 2004 amendments was illustrated by our decision in *Venegas v. IBP, Inc.*, 638 N.W.2d 699 (Iowa 2002). In *Venegas*, the claimant sustained a back injury that caused a thirty-five percent permanent partial industrial disability while working for an employer in California. *Id.* at 700. Years later, while working for a different employer in Iowa, the claimant sustained another back injury resulting in a fifty-five percent industrial disability. *See id.* at 700–01. The commissioner apportioned the award of industrial disability benefits for the latter injury and ordered the second employer to pay benefits representing an award of twenty percent disability. *Id.*[1] However, on judicial review, the district court concluded apportionment was unwarranted "and that IBP was responsible for the total amount of [Venegas's] industrial disability." *Id.* at 701. We agreed and held the full-responsibility rule should apply due to the fresh start Venegas gained when he began work in Iowa for a new employer. *See id.* at 701–02.

**B. The 2004 Amendments to Section 85.34.** In a special session of the general assembly held in 2004, two amendments to section 85.34 were adopted. The first of these was an amendment to section 85.34(2)(*u*), which provided as follows:

---

[1]Prior to the 2004 amendments, we noted the full-responsibility rule could also apply where a claimant sustained successive injuries resulting in permanent disability while working for a single employer. *Excel Corp. v. Smithart*, 654 N.W.2d 891, 898 (Iowa 2002). Notwithstanding, we concluded apportionment was necessary in *Smithart* because the claimant was receiving workers' compensation weekly benefits for a prior work-related injury when the new injury occurred. *Id.* at 899. Under Iowa Code section 85.36(9)(*c*) (2001), apportionment was mandated because the benefits owed to Smithart for the two injuries overlapped. *See Smithart*, 654 N.W.2d at 899–900. The legislature repealed section 85.36(9)(*c*) in 2004. 2004 Iowa Acts 1st Extraordinary Sess. ch. 1001, § 12.

u. In all cases of permanent partial disability other than those hereinabove described or referred to in paragraphs "a" through "t" hereof, the compensation shall be paid during the number of weeks in relation to five hundred weeks as the <u>reduction in the employee's earning capacity caused by the</u> disability bears <u>in relation</u> to the ~~body of the injured~~ <u>earning capacity that the</u> employee ~~as a whole~~ <u>possessed when the injury occurred</u>.

2004 Iowa Acts 1st Extraordinary Sess. ch. 1001, § 10.[2] The second significant aspect of the amendments was the addition of a new section numbered 85.34(7). It provides, in relevant part, as follows:

7. SUCCESSIVE DISABILITIES.

a. An employer is fully liable for compensating all of an employee's disability that arises out of and in the course of the employee's employment with the employer. An employer is not liable for compensating an employee's preexisting disability that arose out of and in the course of employment with a different employer or from causes unrelated to employment.

b. If an injured employee has a preexisting disability that was caused by a prior injury arising out of and in the course of employment with the same employer, and the preexisting disability was compensable under the same paragraph of section 85.34, subsection 2, as the employee's present injury, the employer is liable for the combined disability that is caused by the injuries, measured in relation to the employee's condition immediately prior to the first injury. In this instance, the employer's liability for the combined disability shall be considered to be already partially satisfied to the extent of the percentage of disability for which the employee was previously compensated by the employer.

If, however, an employer is liable to an employee for a combined disability that is payable under section 85.34, subsection 2, paragraph "u", and the employee has a preexisting disability that causes the employee's earnings to be less at the time of the present injury than if the prior injury had not occurred, the employer's liability for the combined disability shall be considered to be already partially satisfied to the extent of the percentage of disability

---

[2]In our reproduction of this amendment, underlining indicates additions and strikethrough indicates deletions.

for which the employee was previously compensated by the employer minus the percentage that the employee's earnings are less at the time of the present injury than if the prior injury had not occurred.

      c. A successor employer shall be considered to be the same employer if the employee became part of the successor employer's workforce through a merger, purchase, or other transaction that assumes the employee into the successor employer's workforce without substantially changing the nature of the employee's employment.

*Id.* § 11.

The legislation included a statement of the general assembly's legislative intent in adopting these amendments to section 85.34. In relevant part, the statement explained the statutory changes would "prevent all double recoveries and all double reductions in workers' compensation benefits for permanent partial disability." *Id.* § 20. The statement of legislative intent further clarified that the amendments to section 85.34 "modifie[d] the fresh start and full responsibility rules of law announced by the Iowa [S]upreme [C]ourt in a series of judicial precedents." *Id.* Yet, the statement notably revealed the general assembly did not intend to eliminate the fresh-start rule altogether. It instead recognized the continuing vitality of the fresh-start rule as modified by the amendments:

The competitive labor market determines the value of a person's earning capacity through a strong correlation with the level of earnings a person can achieve in the competitive labor market. The market reevaluates a person as a working unit each time the person competes in the competitive labor market, causing a fresh start with each change of employment.

*Id.* The statement emphasized in clear terms that the general assembly intended no change of existing law "that is not expressly provided" in the enactment. *Id.*

**C. Effect of the 2004 Amendments.** The commissioner concluded the amended section 85.34 did not alter the fresh-start rule in cases involving successive injuries resulting in industrial disability sustained in the course of employment with different employers. Noting new section 85.34(7)(*b*) established a formula for apportioning disability only for successive work-related injuries sustained while working for the same employer, the commissioner determined Roberts's liability for permanent partial disability benefits in this case cannot be apportioned to account for any disability Billick sustained as a result of his injuries sustained in 1985 and 1993 while working for other employers.

The district court rejected the commissioner's interpretation limiting apportionment to instances of successive injuries sustained while working for the same employer. The court acknowledged that the 2004 amendments did not completely abrogate the fresh-start rule, noting that "[e]ach and every time a worker enters the competitive labor market and obtains a new wage—whether higher or lower than the prior wage—the worker . . . necessarily establishes a new baseline earning capacity." However, the court concluded the commissioner's formulation of the modified fresh-start rule erroneously exposed Roberts to liability—in violation of section 85.34(7)(*a*)—for disability arising from injuries sustained by Billick in 1985 and 1993 while working for different employers. *See* Iowa Code § 85.34(7)(*a*) ("An employer is not liable for compensating an employee's preexisting disability that arose out of and in the course of employment with a different employer . . . ."). The commissioner's failure to order apportionment, the court concluded, exposed Roberts to liability for Billick's double recovery of permanent partial disability benefits—an outcome the general assembly sought to avoid. *See* 2004 Iowa Acts 1st Extraordinary Sess. ch. 1001, § 20.

The district court concluded the new section 85.34(7)(*a*)—when read in conjunction with the amendment of section 85.34(2)(*u*)[3]— unambiguously abrogated the full-responsibility rule and extended the rule of apportionment to successive work-related injuries with different employers. Concluding the commissioner's industrial disability decision did not reveal whether it apportioned Roberts's liability for Billick's loss of earning capacity, the court remanded to the commissioner for findings on Billick's earning capacity before and after the injuries sustained while working for Roberts.

Our review of the discordant readings of the 2004 amendments begins with the proposition that we presume "the legislature is familiar with the holdings of this court relative to legislative enactments." *Mallory v. Paradise,* 173 N.W.2d 264, 266 (Iowa 1969); *see also State v. Jones,* 298 N.W.2d 296, 298 (Iowa 1980) ("The legislature is presumed to know the state of the law, including case law, at the time it enacts a statute."). We have often indicated we presume the legislature was aware of our decisions when it crafted new statutes. *See, e.g., Simbro v. Delong's Sportswear,* 332 N.W.2d 886, 889 (Iowa 1983) ("We assume that at the time the legislature amended [section 85.34(2)(*s*)] it was familiar with the existing case law that evaluated scheduled disability on a functional basis."); *Beier Glass Co. v. Brundige,* 329 N.W.2d 280, 285 (Iowa 1983) (presuming the legislature was aware of our cases interpreting the word "benefits" and the term "weekly compensation"). Thus, we presume the general assembly knew the preexisting law pertaining to the fresh-start

---

[3]Section 85.34(2)(*u*) bases compensation for permanent partial disability for unscheduled injuries "caused by [work-related] disability" on diminution of "the earning capacity . . . the employee possessed when the injury occurred." Iowa Code § 85.34(2)(*u*).

and full-responsibility rules developed in *Nelson, Celotex Corp.,* and *Venegas* when it drafted and passed the 2004 amendments. This presumption is most appropriate here because the statement of intent accompanying the 2004 amendments expressly observed the enactment was intended to modify the fresh-start and full-responsibility rules announced in this court's decisions. *See* 2004 Iowa Acts 1st Extraordinary Sess. ch. 1001, § 20.

At the time the 2004 amendments were adopted, the law applied the fresh-start and full-responsibility rules to claims for permanent partial unscheduled disability arising from successive work-related injuries whether the injuries were sustained while working for the same employer or for different employers. *Venegas,* 638 N.W.2d 699, 701-02 (successive injuries with different employers); *Celotex Corp.,* 541 N.W.2d at 252, 256 (successive injuries with same employer). Thus, the general assembly was aware liability for successive work-related injuries was not generally apportioned.[4] It is undisputed that the legislature intended to modify the rules with the 2004 amendments. *See* 2004 Iowa Acts 1st Extraordinary Sess. ch. 1001, § 20. The fighting question presented here, however, is the extent to which the amendments modified the preexisting rules as they had developed and were applied in our case law.

Upon review, we conclude the commissioner's reading of section 85.34 as amended is correct. We do not believe the amendment is without ambiguity. One of the new sections reads, "An employer is not liable for compensating an employee's preexisting disability that arose out of and in the course of employment with a different employer . . . ."

---

[4]Apportionment was permitted, however, for ascertainable portions of permanent partial disability causally related to preexisting nonwork-related injuries or conditions prior to the 2004 amendments. *See Nelson,* 544 N.W.2d at 264.

Iowa Code § 85.34(7)(*a*). This might suggest that when an employee is determined to have suffered a work-related industrial disability, any resulting award of disability should be offset to account for any previous work-related industrial disability sustained in the course and scope of employment with, and compensated by, a previous employer. However, the section does not expressly say that, and even more importantly, Iowa Code section 85.34 provides no mechanism for apportioning the loss between the present and previous employers. This is in direct contrast to Iowa Code section 85.34(7)(*b*), which explains exactly how the offset is to be calculated when an employee suffers successive injuries while working for the *same* employer. If the legislature wanted to require a credit or offset of disability benefits in cases of successive unscheduled injuries with different employers, it logically would have prescribed how it should be determined.

We also give considerable weight to the general assembly's statement of purpose when it adopted the 2004 amendments. *See* Iowa Code § 4.6(7) (stating that we may rely on the legislature's "preamble or statement of policy" in interpreting an ambiguous statute); *Taft v. Iowa Dist. Ct.*, 828 N.W.2d 309, 317 (Iowa 2013). In this case, the general assembly's statement of purpose was unmistakably clear. The legislature recognized that market forces "reevaluate[] a person as a working unit each time the person competes in the competitive labor market, causing a fresh start with each change of employment." 2004 Iowa Acts 1st Extraordinary Sess. ch. 1001, § 20. We conclude therefore the general assembly unmistakably reaffirmed the vitality of the fresh-start rule in cases involving successive injuries in the course and scope of employment with different employers. With each fresh start, the employee's earning capacity is reset. If a percentage of that refreshed

earning capacity is subsequently lost as a consequence of a permanent partial unscheduled injury, compensation for that percentage is owed. The measure of such compensation is based on "the number of weeks in relation to five hundred weeks as the reduction in the employee's earning capacity caused by the disability bears in relation to the earning capacity that the employee possessed when the injury occurred." Iowa Code § 85.34(2)(*u*). When a successive injury is sustained in the course and scope of employment with a different employer, the earning capacity possessed by the employee when the injury occurred is an earning capacity refreshed by market forces when the new employment began.

The notion underlying the 2004 amendments that a refreshed earning capacity is established upon commencement of new employment is based in part on the proposition that earning capacity is not static. Physical and mental injuries sometimes heal over time, and rehabilitation sometimes restores functional capacity, at least in part. *See Bearce v. FMC Corp.*, 465 N.W.2d 531, 536 (Iowa 1991) (finding the claimant gained a fresh start because after a prior injury he rehabilitated and improved his physical condition). Further, postinjury education sometimes substantially enhances earning capacity prior to commencement of new employment. Thus, the changing nature of factors affecting a claimant's postinjury earning capacity in the competitive labor market is an essential feature of the rationale for the modified fresh-start rule. *See Excel Corp. v. Smithart*, 654 N.W.2d 891, 898 (Iowa 2002) ("[A]n industrial disability is not a final indicator of the degree to which a worker can use his or her body to earn wages, and it does not consider the human capacity and spirit to overcome a disability through rehabilitation, adjustments, simple perseverance, or other methods.").

We respectfully disagree with the district court's conclusion that the commissioner's interpretation of the amendments—preserving the fresh-start rule in cases of successive unscheduled injuries with different employers—cannot be squared with the clear language of section 85.34(7)(*a*), which provides that "[a]n employer is not liable for compensating an employee's preexisting disability that arose out of and in the course of employment with a different employer . . . ." Iowa Code § 85.34(7)(*a*). Under the modified fresh-start rule, the new employer is not liable for disability arising out of unscheduled injuries sustained during past employment with a former employer. The new employer's liability under section 85.34(2)(*u*) for permanent partial disability caused by a successive injury is measured by comparing the claimant's earning capacity "when the injury occurred" with "the reduction in earning capacity caused by the disability." *Id.* § 85.34(2)(*u*). The earning capacity when the injury occurred is a refreshed capacity provided by the fresh-start rule. When, as a consequence of a successive work-related injury, part of that refreshed earning capacity is lost, compensation is owed under section 85.34(2)(*u*). *See id.* In this context, the fresh-start rule holds the employer liable for a work-related permanent partial loss of the new earning capacity refreshed by market forces and existing at the time of the successive injury—not for a preexisting disability arising from employment with a different employer.[5] Thus, we conclude the commissioner did not err in determining the causal connection requirement in section 85.34(2)(*u*) can be harmonized with the language

---

[5]Under this reading of section 85.34(7)(*a*), the subsection might be viewed as unnecessary, since it restates what the law would be anyway. *See* Iowa Code § 4.4(2) (setting forth the presumption that "[t]he entire statute is intended to be effective"). However, for the reasons we have already explained, we think this reading is much more logical and persuasive than the district court's reading of the 2004 amendments.

in section 85.34(7)(*a*) protecting employers from liability for disability arising from employment with a different employer.

The district court also concluded the commissioner's understanding of section 85.34—as amended by the 2004 enactment—violated the general assembly's purpose of preventing double recoveries for successive work-related injuries. We again disagree. As we have explained, the 2004 amendments preserve the fresh-start rule for an employee sustaining successive injuries resulting in permanent partial disability in the course of employment with different employers. Under the rule, the injured employee recovers for a permanent partial loss of a fully refreshed earning capacity redefined by market forces at the time new employment began—not for an additional loss of whatever earning capacity may have been extant prior to commencement of the new employment. In this sense, the employee's recovery for a successive loss of earning capacity sustained in the employment with a new employer is not a double recovery for a prior loss. It is instead a full recovery of that which has been lost as a consequence of the successive injury: a percentage of the refreshed earning capacity.

Under the interpretation of section 85.34 advanced by Roberts, Billick's recovery in this case would be reduced pro tanto, in an amount equal to 425 weeks of compensation he received for the 1985 and 1993 injuries sustained while working for former employers. We reject that interpretation because it is inconsistent with the fresh-start rule and because it assumes earning capacity is static—an assumption we have rejected above. Moreover, the pro-tanto-reduction approach Roberts advocates would not credit increases in earning capacity resulting from restoration of physical capacity, education, training, or work experience achieved prior to commencement of new employment with a different

employer and a successive injury. Indeed, if section 85.34(7)(*a*) required apportionment for successive unscheduled permanent partial disabilities sustained while working for different employers, no employee could ever actually gain a fresh start. The legislature intended to *modify* the fresh-start rule, not eliminate it. 2004 Iowa Acts 1st Extraordinary Sess. ch. 1001, § 20.

"We determine legislative intent from the words chosen by the legislature, not what it should or might have said." *Auen v. Alcoholic Beverages Div.*, 679 N.W.2d 586, 590 (Iowa 2004). If the general assembly had intended to eliminate the fresh-start rule and require apportionment of successive injuries producing permanent partial disability in the course and scope of employment with different employers, we think it would have said so. *See Hook v. Trevino*, 839 N.W.2d 434, 443–44 (Iowa 2013) ("If the legislature had intended volunteer immunity to apply to the state, it presumably would have said so expressly, as it did for the emergency response immunity in the Municipal Tort Claims Act."); *Iowa Med. Soc'y v. Iowa Bd. of Nursing*, 831 N.W.2d 826, 841 (Iowa 2013) ("If the legislature had intended to give another agency or organization the power to determine recognition by the medical profession, it would have said so . . . ."). Instead, the 2004 amendments to section 85.34 prescribed a formula for apportioning only disability arising from successive injuries in the course and scope of employment with the same employer. Notably, the general assembly disavowed any intent to change chapter 85 except as expressly provided in the amendments. 2004 Iowa Acts 1st Extraordinary Sess. ch. 1001, § 20. Accordingly, we conclude the commissioner correctly rejected Roberts's apportionment claim in this case.

## V.  Conclusion.

The commissioner correctly concluded the legislature's 2004 amendments did not modify the fresh-start rule for claimants sustaining successive work-related unscheduled injuries with different employers. Because Billick gained a fresh start when he began his employment with Roberts in 2001, Roberts is not entitled to apportion its liability for permanent partial disability benefits in this case.  The district court's contrary interpretation of section 85.34 was erroneous.  Accordingly, we reverse the district court's ruling and remand the case to the district court with instructions to affirm the commissioner's appeal decision.

**REVERSED AND REMANDED WITH INSTRUCTIONS.**