# IN THE COURT OF APPEALS OF IOWA

No. 21-1530
Filed July 20, 2022

**CENTRAL IOWA FENCING, LTD. and GRINNELL SELECT INSURANCE,**
    Plaintiffs-Appellants,

**vs.**

**JOSH HAYS,**
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Scott D. Rosenberg,

Judge.

An employer and its insurance company appeal the commissioner's finding

of a cumulative injury and award of temporary benefits and costs. **AFFIRMED.**

Kaylie Paul, Stephen W. Spencer, and Christopher S. Spencer of Peddicord

Wharton, LLP, West Des Moines, for appellants.

Nicholas W. Platt of Platt Law Firm, P.C., Urbandale, for appellee.

Heard by Bower, C.J., and Schumacher and Ahlers, JJ.

**BOWER, Chief Judge.**

Central Iowa Fencing, Ltd. (CIF), and Grinnell Select Insurance (collectively "the Employer") appeal an award of workers' compensation benefits to Josh Hays. We find the commissioner did not abuse his discretion in finding a cumulative injury and substantial evidence supports the cumulative injury finding. We affirm the commissioner's award of temporary disability benefits and taxation of costs.

## I. Background Facts & Proceedings

Hays worked for CIF at two separate times: first from 2015 to 2016, and the second time starting in October 2017. Hays had a history of low back pain dating back to 2007, which was usually corrected through adjustments by his chiropractor, Dr. Nicholas Nerem, allowing him to return to normal activities. In July 2017, he returned to Dr. Nerem for a series of three adjustments, and Dr. Nerem released him at "pre-accident status" on August 1.

Hays was hired by CIF in October 2017 in a full-time position with no accommodations.[1] Over the winter he worked on planters and built similar items, then he moved to full-time on a fencing crew, removing and installing fences—a very physical job that required lifting, digging, and repetitive motions. Hays habitually wore a back brace as "preventative maintenance."

On April 26, 2018, Hays injured his back when removing an old fence post in the course of his employment. A coworker took Hays to his chiropractor for an adjustment to address the injury. Mark Dunahoo, the owner of CIF, knew of the

---

[1] Hays had worked seasonally for CIF during fencing season in 2015 and 2016. He left for a time to seek year-round employment. Most of Hays's twenty years of employment history is in the construction field.

injury but completed no paperwork relating to it. Hays stated Dr. Nerem's adjustment following this injury helped but did not bring him back to one hundred percent. Hays continued working, but his coworkers took on more of the heavy lifting.

In late July, his crew was working at a hilly, rocky jobsite pounding posts and digging out rocks when Hays's back flared up. Hays went home early and took the next day off due to his back pain. His work team shifted responsibilities to minimize Hays's physical work. Hays's back condition deteriorated and, two weeks later, Hays had difficulty even putting on his tool belt at work. Dunahoo encouraged Hays to see a doctor but never referred him to a specific doctor and also failed to fill out any workers' compensation information.

Also in July, Hays and his wife moved out of their residence. Several of Hays's friends and coworkers assisted moving the furniture and other heavy items. Hays did very little heavy lifting during the moving process because of back pain.

After a job in early August, Hays was told by his crew foreman to take Friday off and rest his back. Dunahoo called Hays on Friday. With respect to this call, Dunahoo stated he asked Hays to bring a doctor's note to figure out what they could do. Hays asserted Dunahoo said there was no longer work available for him and then called Hays back on Monday, stating he had not fired Hays and would begin the workers' compensation process.

Hays saw Dr. Seth Quam for Employer-authorized treatment in mid-August. Dr. Quam ordered image testing and physical therapy and restricted Hays from returning to work. Hays's workers' compensation claim was denied, and he

pursued imaging at his own cost because of the denial. The doctor recommended injections, and Hays was seen by pain specialists and surgeons.

Hays filed an unemployment claim and was granted benefits after a contested hearing. In its ruling, the administrative law judge found "the employer had no work available or was not willing to accommodate the work restrictions." In November, Hays began working part-time as a cashier at a gas station near his home.

On September 7, Hays filed a petition for arbitration and medical benefits with the workers' compensation commissioner, asserting injury to his back, left leg, and whole body from performing his work duties with CIF. He listed April 26, July 23, and August 9 as injury dates, with disability beginning April 26 through the date of filing.

In January 2019, Hays underwent an independent medical examination (IME) by a physician of his choosing. The examining physician opined Hays had not yet reached maximum medical improvement (MMI) and needed either surgical care or other ongoing pain-management treatment. The doctor opined the work incidents described were the medical cause for Hays's pain and suggested restrictions to sedentary work.

In July, Hays underwent another IME, this time with the Employer's chosen physician. The doctor opined Hays had an irritated nerve root and the appropriate treatment would be pain medication. Hays indicated he did not want to use pain medications. The physician further opined Hays's pain had "unknown or idiopathic causation" in the first week of August 2018. The doctor agreed Hays had a

permanent partial impairment to his back but did not apportion any impairment to Hays's work activities.

The arbitration hearing on Hays's claim occurred on September 11, 2019. At the hearing, evidence submitted included medical records and deposition testimony from Dr. Nerem and Dr. Quam; reports from IMEs by Hays's and the Employer's chosen doctors; a functional capacity evaluation; assorted medical records, depositions, and discovery answers; and testimony from Hays, several of his coworkers, friends, and family.

The presiding deputy workers' compensation commissioner issued a decision on May 28, 2020. The deputy found in Hays's favor, noting "two injurious events depicted in the medical records and through claimant's testimony," and "contemporaneous medical records depict a gradual worsening of claimant's condition." The deputy found a cumulative permanent low back injury precipitated by the successive injuries in April and July 2018 and manifesting August 9, 2018. The Employer was ordered to pay Hays's reasonable medical expenses. Because Hays had not reached MMI, the deputy could not yet determine industrial disability for Hays and instead ordered continuing temporary partial disability benefits. The deputy noted the exam portion of the IME was not a reimbursable cost under Iowa Code section 84.39 (2019) because the Employer had not had its IME completed when the exam was done. The deputy assessed the fee for drafting the report— but not the exam—as costs.

The Employer appealed the arbitration ruling to the workers' compensation commissioner. The commissioner found the deputy "provided a well-reasoned analysis of all the issues raised in the arbitration proceeding. I affirm the deputy

commissioner's findings of fact and conclusions of law pertaining to those issues." The commissioner specifically affirmed Hays "sustained a work-related cumulative permanent material aggravation of his pre-existing low back condition" and affirmed the benefits awarded and costs assessed.

The Employer then filed a petition for judicial review. The district court examined the record and, in September 2021, issued a thorough, well-reasoned ruling. The district court concluded:

> [T]here was substantial evidence in the record to support the commissioner's findings that (1) Hays's injury arose out of an in the course of his employment, (2) he suffered a cumulative injury with a manifestation date of August 9, 2018, (3) awarded Hays temporary total benefits (healing period) and temporary partial benefits, (4) awarded a weekly benefit rate of $525.54, and (5) awarded Hays costs of $2324.40 associated with this action.

The Employer appeals, contesting the cumulative injury finding, the temporary disability and healing period benefits awards, and the report costs assessed.

## II. Standard of Review

Iowa Code chapter 17A (2020) governs judicial review of decisions by the workers' compensation commissioner. *See Ramirez-Trujillo v. Quality Egg, L.L.C.*, 878 N.W.2d 759, 768 (Iowa 2016). "When an appellate court reviews a district court decision that reviewed an agency action, the appellate court's task is to determine if it would reach the same result as the district court in applying the Act." *Gits Mfg. Co. v. Frank*, 855 N.W.2d 195, 197 (Iowa 2014). "[W]e accept the commissioner's factual findings when supported by substantial evidence." *Bluml v. Dee Jay's Inc.*, 920 N.W.2d 82, 84 (Iowa 2018). "[T]he district court and the appellate court should not consider the evidence insubstantial merely because the

court may draw different conclusions from the record."  *Gits Mfg.*, 855 N.W.2d at 197.

"The commissioner commits an abuse of discretion when the exercise of discretion is clearly erroneous or rests on untenable grounds.  This standard, when applied in administrative proceedings, is the same as the abuse of discretion review used in evaluating the exercise of the district court's discretion in other contexts."  *Univ. of Iowa Hosps. & Clinics v. Waters*, 674 N.W.2d 92, 96 (Iowa 2004) (internal citations omitted).

"Generally, we review the workers' compensation commissioner's legal interpretation of Iowa Code chapter 85 for errors at law rather than giving deference to those interpretations."  *Gumm v. Easter Seal Soc'y of Iowa, Inc.*, 943 N.W.2d 23, 28 (Iowa 2020).

**III. Analysis**

The Employer raises several claims on appeal relating to the finding of a cumulative injury, the benefits awarded, and the costs taxed below.

**A.** The Employer's first claim is the commissioner erred by finding Hays incurred a cumulative injury when no claim of cumulative injury was stated in Hays's arbitration petition.

"Whether [an] application for workers' compensation benefits sufficiently informed the [employer] of the possibility of a cumulative injury claim is not, first and foremost, a factual issue, but rather a matter within the agency's discretion."  *Waters*, 674 N.W.2d at 96 (footnote omitted).  In *Waters*, the supreme court found it "important to point out the form [to file a workers' compensation claim in arbitration] does *not* ask applicants to state whether their injuries were cumulative

or acute." 674 N.W.2d at 97. Words such as "gradual" and "repetitive" and verbs like "lifting, carrying, and dumping," which imply repetitive work, along with a history of similar injury problems may sufficiently apprise an employer of the possibility that a cumulative injury may be found to justify a workers' compensation award. *Id.* at 97–99; *see also Oscar Mayer Foods Corp. v. Tasler*, 483 N.W.2d 824, 828 (Iowa 1992).

Here, Hays's petition for arbitration listed multiple injury dates and described what portions of his body he injured. He then stated, "Claimant *continued to exacerbate his condition* with his work duties." (Emphasis added.) We conclude the petition sufficiently apprised the Employer of the possibility the cumulative injury doctrine might apply. The Employer has not proved the commissioner's exercise of discretion was on untenable or clearly erroneous grounds. *See Waters*, 674 N.W.2d at 99.

**B.** The Employer next claims the commissioner erred in finding Hays proved a cumulative injury arising out of and in the course of his employment. The Employer asserts Hays did not provide a credible medical opinion supporting a cumulative injury and argues the commissioner wrongly discounted Hays's preexisting back problems.

The deputy commissioner—whose findings and conclusions were adopted by the commissioner and upheld on judicial review—thoroughly examined the medical records, explained at length the evidence supporting their findings, discounted the opinion of the Employer's chosen doctor, and found other doctors' opinions credible. As to the Employer's assertions regarding Hays's preexisting back condition, while the Employer is not liable for Hays's pre-employment

disability, it is liable for the disability arising out of his employment and relating to the injuries he received—that is, the cumulative aggravation which prevented him from working without accommodation as he did from October 2017 to April 2018. *See* Iowa Code § 85.34(7); *accord Roberts Dairy v. Billick*, 861 N.W.2d 814, 823–24 (Iowa 2015) (explaining the fresh-start rule as: "the employer [is] liable for a work-related permanent partial loss of the new earning capacity refreshed by market forces and existing at the time of the successive injury—not for a preexisting disability"). Nor does the evidence of Hays moving his belongings militate in favor of a decision for the Employer. As the deputy observed, the witness accounts supported Hays's contention that others did most of the heavy lifting for the move.

While the Employer is able to cite evidence to support its view, when we review the record as a whole, we find substantial evidence to support the commissioner's ruling. *See Gits Mfg.*, 855 N.W.2d at 197. First, credible medical evidence supports the ruling, as detailed in the agency and district court rulings. Second, "[i]t is a fundamental requirement that the commissioner consider all evidence, both medical and nonmedical. Lay witness testimony is both relevant and material upon the cause and extent of injury." *Id.* at 199 (alteration in original) (citation omitted). Hays's coworkers from CIF—including company owner Dunahoo—testified Hays worked without accommodation for several months in late 2017 and early 2018; identified specific incidents where Hays stopped working due to injury; and acknowledged after the April 2018 injury Hays had more frequent flare-ups, was often assigned lighter duty to accommodate his injuries because his back "wasn't getting any better," and, by August, Hays was unable to even wear

his tool belt. Substantial evidence supports the finding of an aggravation cumulative injury.

**C.** The Employer disputes the commissioner's award of healing period and temporary disability benefits. The Employer asserts temporary benefits were not owed because Hays was not fired but refused suitable work and voluntarily quit.

At the arbitration hearing, Hays's account of his termination was as follows:

> Q. You said you were fired or terminated. How were you terminated? A. They—after a job on a Thursday, Nathan called me or texted, I can't remember, but said for me to take Friday off and rest my back. That Mark would call me Friday and give me direction as to what I was doing. So I said okay. I took the Friday off, and Mark called and he told me at that point that he no longer had work available for me. This was where our paths had to split, and I was no longer, I don't know what the word is, beneficial to the company, basically.
> . . . .
> Q. Okay. So at that point you considered yourself terminated? A. Yes, sir.
> Q. Did you talk with Mark again after that? A. Yes. He called right away Monday morning and just told me four or five times how he didn't fire me. And I wasn't terminated and he didn't do any of that and that he was going to start a workman's comp claim for me and to go and seek help.

Hays further testified he never received an offer from CIF to return to work after August 9, 2018. The commissioner found Hays's testimony to be credible. In the district court's review, it specifically noted the unemployment decision ruling that Hays had not been offered suitable work despite an availability for light-duty restriction and the record presented was devoid of any written offer of suitable work.

The Employer argues the commissioner (and district court) misinterpreted Iowa Code section 85.33(3) on the requirements for an offer and refusal of suitable

work.  The Employer asserts the two paragraphs of section 85.33(3)[2] operate independently, with paragraph (a) requiring a claimant to accept suitable work in order to qualify for temporary or healing period benefits, while paragraph (b) sets a separate set of requirements if the offer is made in writing.  In other words, the

---

[2] Iowa Code section 85.33(3) provides:

a. If an employee is temporarily, partially disabled and the employer for whom the employee was working at the time of injury offers to the employee suitable work consistent with the employee's disability the employee shall accept the suitable work, and be compensated with temporary partial benefits.  If the employer offers the employee suitable work and the employee refuses to accept the suitable work offered by the employer, the employee shall not be compensated with temporary partial, temporary total, or healing period benefits during the period of the refusal.  Work offered at the employer's principal place of business or established place of operation where the employee has previously worked is presumed to be geographically suitable for an employee whose duties involve travel away from the employer's principal place of business or established place of operation more than fifty percent of the time.  If suitable work is not offered by the employer for whom the employee was working at the time of the injury and the employee who is temporarily, partially disabled elects to perform work with a different employer, the employee shall be compensated with temporary partial benefits.

b. The employer shall communicate an offer of temporary work to the employee in writing, including details of lodging, meals, and transportation, and shall communicate to the employee that if the employee refuses the offer of temporary work, the employee shall communicate the refusal and the reason for the refusal to the employer in writing and that during the period of the refusal the employee will not be compensated with temporary partial, temporary total, or healing period benefits, unless the work refused is not suitable.  If the employee refuses the offer of temporary work on the grounds that the work is not suitable, the employee shall communicate the refusal, along with the reason for the refusal, to the employer in writing at the time the offer of work is refused.  Failure to communicate the reason for the refusal in this manner precludes the employee from raising suitability of the work as the reason for the refusal until such time as the reason for the refusal is communicated in writing to the employer.

offer of suitable work does not have to be in writing, and the employee only need refuse in writing if the offer is in writing.

We do not agree with the Employer's interpretation and find it conflicts with the plain language of the statute. If the written element was optional as asserted, paragraph (b) would begin, "The employer *may* communicate an offer . . . in writing." But the statute is unambiguous: "The employer *shall* communicate an offer of temporary work to the employee in writing." Iowa Code § 85.33(3)(b) (emphasis added). We conclude the appropriate interpretation is paragraph (a) explains what suitable work an employer must offer and an employee must accept in temporary partial disability cases, and paragraph (b) provides guidance on how the offer and a refusal based on suitability of work must be communicated to be relied on in litigation.

Our supreme court has observed, "The question of whether an employer offered suitable work is ordinarily a fact issue." *Neal v. Annett Holdings, Inc.*, 814 N.W.2d 512, 518 (Iowa 2012). By adding the written requirement of paragraph (b) in 2017, the legislature required tangible evidence from which the commissioner could evaluate the work offered and basis of refusal in temporary partial disability cases, lessening the commissioner's need to rely on credibility determinations of the employer's and employee's testimony on a critical question. The two subparagraphs of section 85.33(3) work together, not independently, to protect both the employer and employee in cases for temporary disability benefits. Under section 85.33(3), an employer's offer of suitable temporary work to an injured employee must be in writing, and an employee refusing an offer must communicate in writing the reason for the refusal. The writing ensures evidence exists that

suitable work is offered to the injured employee, the offer is accepted or rejected, and the employer has an opportunity to modify duties if necessary for the work to be suitable—both parties can be held accountable.  We find no legal error in the commissioner's interpretation of section 85.33(3).

The Employer also argues because Hays started a new job on November 5, 2018, he is no longer entitled to healing period or temporary disability benefits. There are two types of temporary disability benefits, total and partial.  The Employer was only liable for temporary total disability benefits until November 2018 when Hays began alternate employment.  *See* Iowa Code § 85.33(1). However, Hays's new employment pays significantly less than his work at CIF, and he has not been shown medically capable to engage in "substantially similar" work to that at CIF.  Section 85.33(3)(a) explains precisely what is to happen in such a circumstance: "If suitable work is not offered by the employer for whom the employee was working at the time of the injury and the employee who is temporarily, partially disabled elects to perform work with a different employer, the employee shall be compensated with temporary partial benefits."  Subsection (4) then provides the temporary partial benefits consist of two-thirds the difference between the employee's pre-injury weekly earnings and the employee's actual gross weekly income with the new employer.  *Id.* § 85.33(4).

Under the statutes and the facts of this case, Hays was eligible for temporary total disability benefits before he began his current employment.  Since his new employment started, he is entitled to temporary partial disability benefits until such time as he reaches MMI and a permanent disability, if any, is determined.

At that time, the provisions of section 85.34 will govern any healing period and permanent partial disability benefits owed. We affirm the commissioner's ruling.

**D.** Last, the Employer asserts costs assessed by the commissioner relating to expert reports should be limited to the Iowa Code section 622.72 cap on fees for expert witness testimony because the reports were submitted in lieu of testimony. *See* Iowa Code § 622.72 (limiting expert witness testimony compensation to a maximum of $150 per day). The Employer asks that we overrule this court's holding on the issue articulated in *John Deere Dubuque Works v. Caven*, 804 N.W.2d 297, 301 (Iowa Ct. App. 2011), where we found Iowa Administrative Code rule 876-4.33 clearly and unambiguously gives the commissioner discretion to award reasonable costs of up to two doctor or practitioner reports.[3]

The reasoning from *Caven* remains convincing. Iowa Code section 86.40 states, "All costs incurred in the hearing before the commissioner shall be taxed *in the discretion of the commissioner*." (Emphasis added.) The administrative rule promulgated to explain which costs are taxable in the commissioner's discretion includes:

> (4) witness fees and expenses as provided by Iowa Code sections 622.69 and 622.72,

---

[3] The Employer also asserts on appeal Hays sought reimbursement for three reports under rule 876-4.33—the report from his treating physician, the report from his IME, and a vocational report. In reviewing the arbitration decision, the commissioner's opinion, and the district court opinion, the only costs assessed were for the report from Hays's IME and his filing fee. Our record is limited to the issues before the commissioner, and this issue was not raised or decided below. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("[I]ssues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

> (5) the costs of doctors' and practitioners' deposition testimony, provided that said costs do not exceed the amounts provided by Iowa Code sections 622.69 and 622.72,
>
> (6) the reasonable costs of obtaining no more than two doctors' or practitioners' reports . . . .

Iowa Admin Code r. 876-4.33(4)–(6).  Notably, while the witness fees and deposition testimony are expressly limited to the amounts provided under Iowa Code sections 622.69 and 622.72, doctor and practitioner reports are only limited to "reasonable costs."  This is an unambiguous distinction, and the Employer cites no persuasive or controlling authority to support overturning our prior decision.[4] The IME report was a taxable cost, and we affirm.

**AFFIRMED.**

---

[4] The Employer argues *Des Moines Area Regional Transit Authority v. Young*, 867 N.W.2d 839 (Iowa 2015), supports a more narrow reading of taxation of costs. *Young* held that only the report from an IME, not the examination, was taxable as a cost under section 86.40 and rule 876-4.33(6).  867 N.W.2d at 845–46.  The opinion provides no indication the report cost should be bound by witness or deposition costs under paragraphs (4) or (5) of rule 876-4.33.