Lyle FLOYD, Appellee,

v.

QUAKER OATS, Appellant.

No. 00–1618.

Supreme Court of Iowa.

June 12, 2002.

Mark A. Woollums and Jean Dickson Feeney of Betty, Neuman & McMahon, L.L.P., Davenport, for appellant.

Pete Leehey and Melissa M. Harbaugh Adams of Wertz & Leehey, P.C., Cedar Rapids, for appellee.

CARTER, Justice.

Quaker Oats, the employer of Lyle Floyd, appeals from a decision on judicial review, which applied the full-responsibility rule in Floyd's workers' compensation claim involving a scheduled injury. After reviewing the record and considering the arguments presented, we reverse the judgment of the district court.

While working at Quaker Oats on September 3, 1993, Floyd slipped, caught himself from falling, and twisted his knee. He immediately reported the injury to his employer. At his employer's request, claimant was evaluated by a general practitioner on October 8, 1993. That physician recommended consultation with Dr. Coates, an orthopaedic surgeon. Dr. Coates concluded that claimant had a full range of motion and no instability in the leg at that time. X-rays of the knee revealed minimal spurring of the superior and inferior aspects of the patella. He concluded that the discomfort that claimant reported was the probable result of a torn or partially torn medial meniscus.

On October 14, 1993, Dr. Coates reported that x-rays revealed the knee to be within limits of normal except for some early arthritic changes. He continued to diagnose the condition as a medial meniscus tear, which should heal. On May 10, 1994, Dr. Coates reported that claimant continued to experience pain along the medial joint line and had a greater compromise of the joint space than had previously been identified.

Following a December 22, 1994 examination, Dr. Coates established a lifting restriction for claimant of forty to sixty pounds and predicted that with this restriction "he will be able to keep going for the foreseeable future." On October 17, 1995, Dr. Coates wrote to claimant's personal physician and reported:

This is a knee that is in a rather awkward position. Obviously, we would like to do something to fix it. On the other hand, I think arthroscopic debridement would fail. I do not think it would give him enough good to worth the cost of

the operation, and yet it is not bad enough to recommend a knee replacement. So, we are really stuck with a knee that is not a good knee, but it may last this way yet for several years.

In response to an inquiry from the employer's lawyer, Dr. Coates reported on July 23, 1996, that claimant's leg had sustained a twenty percent functional impairment. He opined that seventy-five percent of that impairment, a fifteen percent functional disability, was work related and the rest was the result of degenerative arthritis. He fixed July 23, 1996, as the date of maximum recovery from the September 3, 1993 injury.

In a letter to claimant's counsel, Dr. Coates concluded that, with respect to the fifteen percent work-related functional disability of claimant's leg, seventy-five percent of that impairment was attributable to the September 1993 injury.[1] The balance of the functional disability, *i.e.*, 3.75%, was attributed to a cumulative trauma that resulted from claimant's work activities subsequent to September 3, 1993. Claimant filed a petition to arbitrate the September 3, 1993 injury. He also filed a petition claiming a cumulative injury subsequent to September 3, 1993. He later dismissed the petition involving the September 3, 1993 injury without prejudice in the face of a statute-of-limitations defense. The deputy industrial commissioner found that the claimant had sustained a cumulative injury of 3.75% from day-to-day work activities after September 3, 1993. He concluded, however, that the full-responsibility rule recognized in *Second Injury Fund v. Nelson*, 544 N.W.2d 258, 265 (Iowa 1995), and *Celotex Corp. v. Auten*, 541 N.W.2d 252, 254 (Iowa 1995), should be applied to pro-

duce a compensable impairment of fifteen percent of the use of claimant's leg.

On appeal to the industrial commissioner's designee, the deputy's decision was upheld in all respects other than the application of the full-responsibility rule. The appeal decision concluded that the full-responsibility rule is only applicable in body-as-a-whole disability cases and does not apply to functional impairment that is determinative of compensation for scheduled injuries. On claimant's petition for judicial review, the district court disagreed with the agency's refusal to apply the full-responsibility rule and ruled that the disability established in the opinion of the deputy industrial commissioner was correct. Other facts that are significant in deciding this appeal will be discussed in connection with our consideration of the legal issues presented.

## I. *Whether the Cumulative Injury Found to Exist Arose Out of Claimant's Employment.*

The first argument advanced by the employer is a claim that the evidence does not show that the cumulative injury found to have occurred subsequent to September 3, 1993, arose out of claimant's employment. The employer urges that, as this court recognized in *Miedema v. Dial Corp.*, 551 N.W.2d 309 (Iowa 1996), to arise out of one's employment, "the injury must not have coincidentally occurred while at work, but must in some way be caused by or related to the working environment or the conditions of . . . employment." *Miedema*, 551 N.W.2d at 311.

 It is evident from the medical reports that were tendered in evidence that Dr. Coates, whose evaluations form

---

1. In various reports and communications referred to in this opinion, Dr. Coates refers to an October 1993 injury, but the context of these communications convinces us that he is referring to the September 3, 1993 injury.

the basis for the agency's finding of disability, had been made aware of the tasks that claimant performed on a routine basis. It is also clear that his determination was based on cumulative trauma sustained from the claimant's day-to-day work activities. We are satisfied that the additional disability resulting from these work activities was properly found by the commissioner to be a cumulative injury arising out of claimant's employment. Contrary to the employer's contention, there is no general principle in workers' compensation law that requires, as a condition of compensability, that workplace activities must involve more hazard or exertion than a claimant's activities outside of the workplace. That requirement is only true in selected instances, such as claims for heart attacks or mental illness. *See Dunlavey v. Econ. Fire & Cas. Co.*, 526 N.W.2d 845, 858 (Iowa 1995) (mental injury); *Sondag v. Ferris Hardware*, 220 N.W.2d 903, 905 (Iowa 1974) (heart attack).

## II. *Whether a Cumulative Injury Was Established.*

The employer contends that a cumulative injury has not been established. It urges that to show a cumulative injury a claimant must produce evidence of having suffered a distinct and discreet disability solely attributable to work activities over time, as opposed to an aggravation of a preexisting injury from an identified traumatic event. The employer urges that this argument is supported by our decision in *Ellingson v. Fleetguard, Inc.*, 599 N.W.2d 440, 444 (Iowa 1999).

In *Ellingson* the claimant sustained a traumatic injury to her neck when a box fell on her in 1985. She continued to suffer problems over the next several years and subsequently alleged that a cumulative injury unrelated to the 1985 traumatic injury had manifested itself in 1992.

Claimant's counsel admitted in argument that the cumulative-injury claim was designed to produce a new date of injury, which would provide a higher wage base for computing her compensation.

The significant factor in the *Ellingson* case was that the extent of the 1985 injury was being litigated in the same proceeding in which the separate cumulative-injury claim was being urged. Moreover, the evidence conclusively showed that the ultimate extent of industrial disability was affected by job-related activities that aggravated the 1985 neck injury. As a result of that circumstance, this court held that the compensable consequences of the aggravation of the 1985 neck injury must be adjudicated as part of the disability flowing from that injury.

In the present case, claimant's arbitration petition seeking benefits for the September 3, 1993 injury was voluntarily dismissed in the face of a statute-of-limitations defense by the employer. The industrial commissioner concluded that the dismissal of that petition precluded any consideration of the September 3, 1993 injury as a compensable event. Given this circumstance, we believe that claimant should be permitted to recover by way of a cumulative-injury claim for any increase in functional disability shown to have occurred as the result of day-to-day activities in the workplace subsequent to the September 3, 1993 injury.

Some support for our conclusion on this issue is found in *Ziegler v. United States Gypsum Co.*, 252 Iowa 613, 620, 106 N.W.2d 591, 595 (1960). In that case, an earlier traumatic injury had been compensated, and the claimant, in lieu of a review reopening proceeding, elected to file an original arbitration petition in which he sought compensation for the increased degree of disability that resulted from day-

to-day workplace activities that aggravated a prior back injury. We approved a separate award for the percentage of permanent partial disability shown to exist over and above the percentage of disability adjudged with respect to the prior injury.

The *Ziegler* decision stands for the proposition that, when a permanent disability has been established by an adjudicated award, a later aggravation may provide an independent compensable event but only to the extent of the increased disability that flows therefrom. *See Ziegler*, 252 Iowa at 620, 106 N.W.2d at 595. We do not believe that the results should be different in the present case simply because there was no award for the prior injury as a result of the claim having become time barred. We are convinced that the agency's conclusion that the evidence supported an award of compensation for a cumulative injury is not contrary to law.

### III. Whether the Full–Responsibility Rule Applies to the Determination of Functional Impairment in the Compensation of Scheduled Injuries.

The appeal decision at the agency level concluded that the principle that supports a full-responsibility rule in cases involving body-as-a-whole disability does not extend to disability from injury to scheduled members based on functional loss of use. The district court disagreed. We agree in part with the agency's conclusion.

The extent of the claimant's entitlement to permanent disability benefits is determined by one of two methods. If it is found that the permanent physical impairment is limited to a body member specifically listed in schedules set forth in one of the subsections to Iowa Code section 85.34(2) (1999), the disability is considered a scheduled-member disability and is compensated based on the degree of functional impairment shown to exist. Loss of the use of a scheduled member is equivalent to the loss of that member. *Moses v. Nat'l Union C.M. Co.*, 194 Iowa 819, 822, 184 N.W. 746, 747 (1921). A scheduled-member disability is compensable based on the percentage of functional loss. Iowa Code § 85.34(2). Pursuant to the second unnumbered paragraph of Iowa Code section 85.34(2)(u), the industrial commissioner may equitably prorate compensation payable in such cases where the functional loss is less than 100%. *Blizek v. Eagle Signal Co.*, 164 N.W.2d 84, 87 (Iowa 1969).

On the other hand, if the disability results from the impairment of the body not involving a body member listed in section 85.34(2), compensation is based on a test of industrial disability from the injury to the body as a whole and compensated pursuant to the first unnumbered paragraph of Iowa Code section 85.34(2)(u). Unlike scheduled-member disability the extent of body-as-a-whole disability is determined by assessing the loss of earning capacity resulting from the injury. *Murillo v. Blackhawk Foundry*, 571 N.W.2d 16, 18–19 (Iowa 1997).

In upholding the full-responsibility rule in body-as-a-whole liability cases, this court, in *Celotex*, 541 N.W.2d at 254, relied extensively on the following passage from a leading workers' compensation treatise:

> The capacities of a human being cannot be arbitrarily and finally divided and written off by percentages. The fact that a man has once received compensation as for 50 percent of total disability does not mean that ever after he is in the eyes of compensation law but half a man, so that he can never again receive a compensation award going beyond the other 50 percent of total. After having received his prior payments, he may, in future years, be able to resume gainful employment.... [H]e may have resumed employment as a "working unit."

If so, there is no reason why a disability which would bring anyone else total permanent disability benefits should yield him only half as much.

2 Arthur Larson, *The Law of Workers' Compensation* § 59.42(g)(3), at 10–599 (1981).

■ With respect to scheduled injuries, the treatise suggests "[a] similar principle may be applied to an individual member that has been restored in whole or in part." *Id.* The *Celotex* decision was a recognition on our part that application of the full-responsibility rule in body-as-a-whole disability situations is based on the premise of a fresh start with respect to industrial disability. It permits a new determination of loss of earning capacity based on earnings from resumed employment following a prior disabling injury. As the Larson treatise suggests, however, this principle is only applicable with respect to scheduled injuries to the extent that it is shown that the individual member "has been restored in whole or in part."

If claimant's September 3, 1993 injury resulted in a discreet and determinable functional disability of 11.25% of the use of his leg, there is nothing in the record to suggest that this condition improved so as to restore any portion of that functional loss. Indeed, the record shows that the condition of his leg deteriorated. Consequently, the final agency decision was correct if that degree of prior disability has been shown.

■ Ever since *Rose v. John Deere Ottumwa Works,* 247 Iowa 900, 76 N.W.2d 756 (1956), our law has recognized the distinction between preexisting conditions and preexisting disability. Full compensation is allowed for the result of workplace activities aggravating a preexisting condition. *Rose,* 247 Iowa at 908, 76 N.W.2d at 760–61. Thus, for the apportionment rule to be applied in situations in which apportionment would otherwise be proper, the preexisting injury must have independently produced a discreet and ascertainable degree of disability. *Celotex,* 541 N.W.2d at 255 (citing 2 Larson § 59.22(a), at 10–492.361; § 59.22(b), at 10–492.389). In other words, it must be shown that a particular percentage of permanent disability would have resulted from the prior event acting alone.

■ In the present case, the finding of the deputy industrial commissioner on the nature of the prior injury was

[t]he work injury of September [3], 1993, is found to be a cause of an 11.25 percent permanent impairment of the claimant's right lower extremity and the aggravation of the right lower extremity by the claimant's continued work at Quaker Oats was a cause of a 3.75 percent permanent impairment of the claimant's right lower extremity....

The findings of the industrial commissioner's designee on appeal, while worded somewhat differently, mirror those of the deputy. The opinion of Dr. Coates indicated that, of the 15% work-related impairment, "75 percent of that 15 percent is based upon the [September 3, 1993] injury." We are satisfied that the agency could interpret this medical opinion as supporting its finding that an 11.25% permanent impairment of claimant's leg was independently caused by the September 3, 1993 injury.

We have considered all issues presented and conclude that the judgment of the district court must be reversed and the case remanded for an order upholding the final decision of the agency.

**REVERSED AND REMANDED.**

All justices concur except NEUMAN, J., who takes no part.