# IN THE COURT OF APPEALS OF IOWA

No. 24-2049
Filed October 29, 2025

**MECENE LAGUERRE,**
        Plaintiff-Appellant,

**vs.**

**JBS USA HOLDINGS, INC. and AMERICAN ZURICH INSURANCE COMPANY,**
        Defendants-Appellees.
_____

        Appeal from the Iowa District Court for Polk County, Paul D. Scott, Judge.


        An employee appeals the district court's denial of his petition for judicial review of the workers' compensation commissioner's ruling. **AFFIRMED.**


        Andrew W. Bribriesco (argued) and Gabriela Navarro of Bribriesco Law Firm P.L.L.C., Bettendorf, for appellant.

        Andrew J. Workman (argued) and Patrick V. Waldron of Patterson Law Firm, L.L.P., Des Moines, for appellees.


        Heard at oral argument by Chicchelly, P.J., and Buller and Langholz, JJ.

**LANGHOLZ, Judge.**

One key question in many workers' compensation cases is whether the employee's injury is scheduled or unscheduled under Iowa Code section 85.34(2) (Supp. 2021). This case requires us to answer that question for an injury to the skin on only two body parts—an arm and a leg. Following longstanding judicial and agency precedent, the workers' compensation commissioner decided that such an injury to Mecene Laguerre was scheduled because the skin injury was limited to two body parts that were scheduled under Iowa Code section 85.34(2)(t).

On judicial review, Laguerre claims that the commissioner erred because a non-face-or-head skin injury is always unscheduled as a matter of law under section 85.34(2). He points out that skin is not listed as a scheduled injury under that subsection. And he relies on the American Medical Association's *Guides to the Evaluation of Permanent Impairment* ("*AMA Guides*")—which paragraph "x" of the subsection requires to be the sole basis for deciding "the extent of loss or percentage of impairment"—because the *AMA Guides* calculates a functional-impairment rating for the skin as an impairment of the whole person.

But we agree with the district court that the commissioner did not err. Paragraph "x" does not make the *AMA Guides* the arbiter of whether an injury is scheduled or unscheduled. Neither does the *AMA Guides* support an interpretation that all skin injuries, no matter how limited, must be unscheduled. And so, the addition of paragraph "x" to the statute in 2017 does not abrogate the settled precedent—recently reaffirmed by our supreme court—that injuries to the skin must be evaluated case-by-case to determine whether the injury is localized to a scheduled body part or extends to the whole body. We thus affirm.

I.

Laguerre is employed by JBS USA Holdings, Inc., at one of its meat-packing facilities in Ottumwa.  He began working for JBS in April 2017, mainly in a position called "tongue cut–off" where he cuts the tongues of hog carcasses.  But one day in October 2021, Laguerre was ordered to work a different position—as a "skinner."  Laguerre's duty as a skinner was to check hog carcasses for feces.  And if a hog carcass had feces, Laguerre would flag it and his coworkers would remove the hog from the line to clean it.  When trying to remove a flagged hog, one of Laguerre's coworkers wielding a Whizard knife—a mechanized circular blade used to slice through animal carcasses—collided with Laguerre, severing skin tissue from his muscles on his right arm.  This is known as a "degloving" injury.

Laguerre was taken to a local hospital in Ottumwa before being transferred to the University of Iowa Hospitals and Clinics.  There, a doctor grafted skin from Laguerre's right thigh to his right arm.  Laguerre seemed to recover well and was cleared to return to work in mid-November—less than a month after the injury.  But in early 2022, Laguerre began reporting pain, itching, tightness, and limited range of motion on his right arm and pain in his right leg.  And Laguerre's issues with his arm and leg did not resolve after continued treatment.

In January 2022, Laguerre petitioned for workers' compensation benefits against JBS and its insurer, American Zurich Insurance Company.[1]  At the March 2023 arbitration hearing before a deputy workers' compensation commissioner to decide Laguerre's entitlement to permanent disability benefits, the main dispute

---

[1] Because the interests of JBS and its insurer fully align throughout this proceeding and on appeal, we refer to only JBS for readability in this opinion.

was whether Laguerre suffered a scheduled or unscheduled injury. JBS argued that Laguerre suffered only an injury to his right arm—a scheduled injury under Iowa Code section 85.34(2)(m)—with a functional-impairment rating of 9% that would thus entitle him to 22.5 weeks of benefits. Laguerre, on the other hand, argued that his injury extended beyond just his arm to his body as a whole and that he thus suffered an unscheduled injury under Iowa Code section 85.34(2)(v) that should be compensated using the industrial-disability method.[2]

Each party tried to support their preferred outcome with dueling expert opinions. JBS's expert gave Laguerre a 9% impairment rating for only the right arm. He explained that he used the framework of the *AMA Guides*, assigning "the maximum numerical value for his Class 1 skin impairment (9%) due to the hypertrophic scarring, pruritis, and deformity seen in the skin overlying only the right upper extremity." *See* Am. Med. Ass'n, *Guides to the Evaluation of Permanent Impairment* 178 tbl. 8-2 (Linda Cocchiarella & Gunnar B.J. Andersson, eds., 5th ed. 2001) [hereinafter "*AMA Guides*"]. But he opined that, despite his "understanding" that the *AMA Guides* "recommended use of whole person impairments," he did not believe it was "appropriate to assign [Laguerre] an impairment that applies to the whole body because his injured tissues involved only his right upper extremity." He also supported his rating with a separate methodology that "burn surgeons use to estimate total body surface area."

---

[2] Although Laguerre had returned to work for the same employer at the same rate of pay, he argued that he fell outside the exception requiring compensation by the functional-impairment method in the third sentence of paragraph "v" because he was earning less due to working less overtime after his injury. *See* Iowa Code § 85.34(2)(v); *Loew v. Menard, Inc.*, 2 N.W.3d 880, 886–87 (Iowa 2024). Given the resolution of the main fight, the deputy commissioner did not reach that issue.

Laguerre's expert gave Laguerre a rating of "7% impairment of the body as a whole" under a heading "right upper extremity/right lower extremity" (capitalization and emphasis removed). The expert explained that under that *AMA Guides*, "Laguerre meets the criteria for a Class 1 skin impairment" with "massive scarring over his right upper arm," "grafting scars over his right lower extremity that are painful, hypertrophic, and hyperpigmented," and limited "right hand grip strength." He also noted that Laguerre "has to apply lotion and sunscreen, and is sensitive to environmental conditions such as heat and sunlight."

The deputy commissioner did not agree entirely with either party. He found flaws with both experts' reports but ultimately decided that Laguerre's expert was "more persuasive." The deputy commissioner reasoned that the expert's "assessment appears to be in line with the AMA Guides, Fifth Edition, while [JBS's expert] has implemented his own methodology" and explained "I am compelled to select an impairment rating that complies with the AMA Guides, Fifth Edition." The deputy commissioner thus found that Laguerre "sustained a combined seven percent whole person impairment to his upper and lower extremities."

Based on this finding and other evidence in the record, the deputy commissioner found that Laguerre's injury was to only his right arm and right leg. The deputy commissioner thus rejected both JBS's argument that Laguerre suffered only a scheduled arm injury and Laguerre's argument that it extended into the body as a whole. Instead, the deputy commissioner concluded that Laguerre's injury of two body parts was scheduled under section 85.34(2)(t). Citing much supporting agency precedent, the deputy commissioner reasoned that because Laguerre's skin injury was confined to one arm and one leg, "[t]he mere fact that a

whole person impairment rating was rendered does not convert the case from a bilateral scheduled member injury to be compensated pursuant to Iowa Code section 85.34(2)(t) into an unscheduled injury to be compensated pursuant to Iowa Code section 85.34(2)(v)." Calculating the award based on the statutory 500-week schedule under section 85.34(2)(t) and the 7% impairment rating, the deputy commission thus held that Laguerre was entitled to 35 weeks of permanent partial disability benefits.

Laguerre appealed the deputy's decision to the commissioner. *See* Iowa Code § 10A.321. He framed the issue as "legal in nature," and asked: "Can permanent disability to the skin be deemed an unscheduled injury pursuant to section 84.34(2)(v) because the AMA Guides (Fifth Edition) instructs that impairment evaluation to the skin—regardless of the location on the injury—[is] to be rated as a whole person impairment?" Laguerre conceded that precedent supported the deputy's contrary decision. But he argued that the 2017 amendment adding paragraph "x" to section 85.34(2)—which mandates that "the loss of percentage or permanent impairment shall be determined solely by utilizing" the *AMA Guides*—made that precedent no longer "controlling." The commissioner "affirm[ed] the deputy commissioner's findings of fact and conclusions of law" in full without adding any new reasoning.

Laguerre then petitioned for judicial review under Iowa Code chapter 17A. He did not challenge the commissioner's factual findings. Rather, he claimed that the commissioner's decision was based on an erroneous interpretation of section 85.34(2) because a skin injury—other than disfigurement to the face or head—must always be unscheduled. *See* Iowa Code § 17A.19(10)(c).

The district court disagreed with Laguerre and affirmed the commissioner's decision. The court reasoned that since Laguerre's skin injury was limited to one arm and one leg, paragraph "t" of section 85.34(2) classifies his injury as scheduled. And it rejected Laguerre's argument based on paragraph "x" and the *AMA Guides* because that paragraph "is crystal clear" that the *AMA Guides* "must be used to determine functional disability or permanent impairment, not whether an injury is scheduled or unscheduled" and the *AMA Guides* does not support Laguerre's interpretation. Laguerre now appeals.

II.

The parties agree that this appeal presents a purely legal question of statutory interpretation: whether Laguerre is correct that section 85.34(2) makes a skin injury—other than disfigurement to the face or head—unscheduled as a matter of law. Because the legislature has not vested the commissioner with authority to interpret this statute, we review the commissioner's contrary interpretation of section 85.34(2) for corrections of errors at law under section 17A.19(10)(c)—without any deference to the commissioner's or district court's decisions. *See Bridgestone Americas, Inc. v. Anderson*, 4 N.W.3d 676, 682 (Iowa 2024); *Carreras v. Iowa Dep't of Transp.*, 977 N.W.2d 438, 444 (Iowa 2022) (explaining that appellate courts apply the same statutory standards of judicial review of the agency action as the district court).

"Section 85.34(2) governs compensation for permanent partial disabilities." *Bridgestone*, 4 N.W.3d at 682. Under the statute, "[t]he method and extent of compensation depends in large part on whether the employee's injury is considered scheduled or unscheduled." *Id.* (cleaned up). In twenty-one

paragraphs—"a" through "u"—the statute schedules twenty-one injuries, setting the number of weeks that compensation must be paid for the full loss of specific body parts or functions. *See id.*; *see also* Iowa Code § 85.34(2)(a)–(u). These amounts range from 7.5 weeks for the loss of only one segment of a toe "other than the great toe," Iowa Code § 85.34(2)(i); *see also id.* § 85.34(2)(j), to 500 weeks for "[t]he loss of both arms, or both hands, or both feet, or both legs, or both eyes, or any two thereof, caused by a single accident," *id.* § 85.34(2)(t). If, as is often the case, the employee does not sustain the full loss or impairment of the scheduled body part, then compensation can be paid only for a percentage of the scheduled number of weeks in proportion to the extent of the actual loss of the body part—"that is, the extent to which a body part's function has been impaired." *Bridgestone*, 4 N.W.3d at 682; *see also* Iowa Code § 85.34(2)(w). This is known as the functional-impairment method of compensation. *See Bridgestone*, 4 N.W.3d at 682.

Paragraph "v" governs unscheduled injuries, which are "all cases of permanent partial disability other than those described or referred to in paragraphs 'a' through 'u'"—the paragraphs that provide for the scheduled injuries. Iowa Code § 85.34(2)(v). Back, neck, rib, and brain injuries—just to name a few—fall within this definition. *See Bridgestone*, 4 N.W.3d at 685. Unscheduled injuries are paid for a percentage of 500 weeks—the same length as the highest-compensated scheduled injury. *Compare* Iowa Code § 85.34(2)(v), *with id.* § 85.34(2)(t). And by default, that percentage is based on the loss of earning capacity caused by the injury, often referred to in practice and precedent as "the industrial method." *Loew v. Menard, Inc.*, 2 N.W.3d 880, 886–87 (Iowa 2024). But since a 2017 amendment

to the statute, if the employee returns to work at the same or greater pay, then the percentage of weeks is determined using the functional-impairment method just like a scheduled injury. *See id.*; *see also* 2017 Iowa Acts ch. 23, § 8. Because of these differences between compensation of scheduled and unscheduled injuries, employees "typically receive greater compensation for unscheduled whole body injuries than they would for scheduled member injuries." *Chavez v. MS Tech. LLC*, 972 N.W.2d 662, 667 (Iowa 2022).

In 2017, the legislature added another provision—paragraph "x"—governing the functional-impairment method of compensation. *See* 2017 Iowa Acts ch. 23, § 9. Paragraph "x" requires that "the extent of loss or percentage of permanent impairment shall be determined solely by utilizing the guides to the evaluation of permanent impairment, published by the American medical association, as adopted by the workers' compensation commissioner by rule pursuant to chapter 17A." Iowa Code § 85.34(2)(x). And to be abundantly clear that the *AMA Guides* must be exclusive, that paragraph also includes a prohibition: "Lay testimony or agency expertise shall not be utilized in determining loss or percentage of permanent impairment pursuant to paragraphs 'a' through 'u', or paragraph 'v' when determining functional disability and not loss of earning capacity." *Id.* Consistent with the statutory duty, the commissioner has adopted the fifth edition of the *AMA Guides. See* Iowa Admin. Code r. 876-2.4.

This much of the interpretation of section 85.34(2) is common ground. But the parties stake out different positions as to how Laguerre's skin injury fits into the statutory scheme. JBS now defends the commissioner's decision that, because Laguerre's skin injury was limited to his right arm and leg, it was a scheduled injury

under paragraph "t." *See* Iowa Code § 85.34(2)(t) (scheduling "[t]he loss of both arms . . . or both legs . . . or any two thereof, caused by a single accident"); *Simbro v. Delong's Sportswear*, 332 N.W.2d 886, 889 (Iowa 1983). And Laguerre argues that the commissioner erred because the statute requires a skin injury—other than disfigurement of the face or the head under paragraph "u"—to be an unscheduled injury under paragraph "v" as a matter of law.

Laguerre makes two main arguments in support of his interpretation. First, he argues that because skin is not described in paragraphs "a" through "u," a non-face-or-head skin injury falls within the plain text of paragraph "v" as an unscheduled injury.[3] Second, he argues that paragraph "x"—which requires "the extent of loss or percentage of permanent impairment shall be determined solely by utilizing" the *AMA Guides*—mandates that skin be an unscheduled injury because the *AMA Guides* calculates a functional-impairment rating for the skin as an impairment of the whole person. We address each argument in turn.

*Text, Structure, and Precedent.* Laguerre's first argument based on the lack of any mention of skin in the paragraphs setting the scheduled injuries has some surface-level appeal. But diving deeper, Laguerre's logic would undermine the entire statutory structure. And perhaps it is no surprise then that it also conflicts with longstanding precedent of both the workers' compensation commissioner and

---

[3] Laguerre carves out skin injuries to the face or head from his absolute rule because he concedes that those skin injuries could be scheduled if they resulted in "permanent disfigurement of the face or head which shall impair the future usefulness and earnings of the employee in the employee's occupation at the time of receiving the injury." Iowa Code § 85.34(2)(u).

the judiciary that was recently reaffirmed by our supreme court in *Delaney v. Second Inj. Fund of Iowa*, 6 N.W.3d 714 (Iowa 2024).

To be sure, Laguerre is correct that the word "skin" appears nowhere in section 85.34(2). But neither does "bone" or "muscle." *See* Iowa Code § 85.34(2). And Laguerre does suggest that a muscular injury to his arm must be unscheduled because muscle is not listed in paragraphs "a" through "u." Nor could he.

Section 85.34(2) is structured more simply to describe most scheduled injuries as "the loss of" one or more body parts.[4] Iowa Code § 85.34(2)(a)–(r), (t). This means the literal loss—severance from the body by accident or amputation— or the loss of use of the described body part. *See Floyd v. Quaker Oats*, 646 N.W.2d 105, 109 (Iowa 2002) ("Loss of the use of a scheduled member is equivalent to the loss of that member."); *Moses v. Nat'l Union Coal Mining Co.*, 184 N.W. 746, 747 (Iowa 1921) (affirming compensation for the full scheduled weeks "for the loss of a foot" when the commissioner found that an ankle injury caused 100% loss of use of the foot and evidence showed that the loss of use "was in reality greater than would have resulted from the amputation of the foot after an artificial member had been provided"). If an arm is lost entirely, that necessarily includes the loss of bones, muscles, skin, and portions of all the other bodily systems—like the nervous or vascular systems—that are in the arm. But the statute focuses the question on the body part lost or impaired in its use—not

---

[4] The exceptions are scheduled injuries related to hearing loss, *see* Iowa Code § 85.34(2)(s) (describing injury as "loss of hearing" or "occupational hearing loss," which gets its own entire chapter, 85B), and "disfigurement of the face or head," *id.* § 85.34(2)(u), which commonsensically is not described in parallel form to the others as "loss of the head."

the part's constituent bones, muscle, skin, and nerves. *Cf. Chavez*, 972 N.W.2d at 669 (interpreting "the loss of a shoulder" under paragraph "n" broadly "in the functional sense" to include not just the shoulder joint but also the "muscles that comprise the rotator cuff").[5]

This does not mean that an injury to the skin—or a bodily system like the nervous system—can never be an unscheduled injury under paragraph "v." For example, when an initial foot injury caused "a circulatory ailment, from which [the employee] suffers a constant burning [pain], affecting her entire nervous system," our supreme court held that the injury was unscheduled, reversing the commissioner's contrary finding that it was a scheduled foot injury. *Barton v. Nevada Poultry Co.*, 110 N.W.2d 660, 661, 664 (Iowa 1961). On the other hand, the court affirmed the commissioner's decision that carpal and cubital tunnel syndrome—a nervous system injury[6]—affecting only one hand was a scheduled injury when the employee failed to prove that any broader nervous system injuries were work-related. *See Sherman v. Pella Corp.*, 576 N.W.2d 312, 316, 320–21 (Iowa 1998). In doing so, the court distinguished *Barton* because the injury there went beyond the scheduled body part and "affected the employee's entire nervous system." *Id.* at 320.

Our supreme court recently reaffirmed and elaborated on this precedent in *Delaney*, 6 N.W.3d at 720. It reiterated that deciding whether an injury that impacts

---

[5] Laguerre contends that under *Chavez*, we should instead consider the functional sense of skin. But "skin" is not a term used in the statute. As in *Chavez*, it is the scheduled body parts—the arm and the leg, here—that we must interpret.
[6] *See Delaney*, 6 N W.3d at 721 ("[A] carpal tunnel injury to the wrist results in impingement of the median nerve, a part of the nervous system." (cleaned up)).

a bodily system is scheduled or unscheduled "is a fact-based inquiry that must be determined on a case-by-case basis." *Id.* If the injury to the bodily system results "only in localized loss of use to a scheduled" body part, then the injury is a scheduled injury of that body part. *Id.* at 721. But if the injury to the bodily system extends beyond the scheduled body part, then it is an unscheduled injury. *Id.* And so, the court reversed the commissioner's legal conclusion "that an injury to the vascular system is, as a matter of law, an unscheduled injury to the whole body," rather than properly deciding whether the specific vascular injury was limited to just a scheduled body part. *Id.* at 722.

To illustrate the proper way to decide whether an injury to a bodily system—or whole-body organ like the skin—is scheduled or unscheduled, the court in *Delaney* highlighted several decisions of the commissioner and an unpublished decision of our court as examples of "the correct approach." *Id.* One of those cases involved a skin "degloving" injury to an arm much like Laguerre's. *See id.* (citing *Topete v. Glob. Food Processing*, No. 1167910, 1999 WL 33619689, at *1 (Iowa Workers' Comp. Comm'r June 24, 1999)). The deputy commissioner found that the claimant had only a scheduled injury to his arm, rejecting his argument that the injury to the skin was unscheduled and explaining "[t]he mere fact that the skin covers the entire body does not render an injury to the skin of the arm an injury to the body as a whole." *Id.* (quoting *Topete*, 1999 WL 33619689, at *1). By this logic, the deputy commissioner further explained, "a broken bone would be an injury to the body as a whole since the skeletal system runs throughout the body." *Topete*, 1999 WL 33619689, at *1.

In other cases highlighted by the supreme court, the commissioner found that an injury to only part of the circulatory system or part of the nervous system was scheduled because the injury was contained within the scheduled body part. *See Delaney*, 6 N.W.3d at 721 (citing *Reichert v. John Deere Waterloo Works*, No. 21700341.01, 2022 WL 17915446, at *9 (Iowa Workers' Comp. Comm'r Dec. 19, 2022); *Burk v. Elliot Oil Co.*, No. 22000068.01, 2023 WL 5006058, at *7 (Iowa Workers' Comp. Comm'r July 31, 2023)).  And the court favorably quoted our court's reasoning that an employee's neuropathy limited to his leg was still a scheduled injury "because the employee's 'injury was confined to a scheduled member.'" *Id.* (quoting *Second Inj. Fund of Iowa v. Armstrong*, No. 10-1689, 2011 WL 2090023, at *4 (Iowa Ct. App. May 25, 2011)).  Indeed, the court itself noted, "concluding that any damage to the nervous system, vascular system, or skeletal system is unscheduled would largely do away with the statutory schedule altogether." *Id.* (cleaned up).

Laguerre brushes aside *Delaney* as "not controlling" because it analyzed whether an injury was scheduled or unscheduled in the context of second-injury-fund payments under section 85.64(1) rather than directly under section 85.34(2).[7] *See id.* at 722.  But the relevant issue is the same.  Indeed, the supreme court relied on cases deciding the issue under both 85.34(2) and 85.64(1)

---

[7] The second injury fund provides compensation to some employees who suffer a second injury after a prior permanent loss.  *See* Iowa Code § 85.64(1); *Delaney*, 6 N.W.3d at 717–18.  To trigger the liability of the fund, both the first and second injuries must be a loss enumerated in section 85.64(1), which includes a loss of "one hand, one arm, one foot, one leg, or one eye."  Iowa Code § 85.64(1).  These listed injuries overlap with section 85.34(2), but section 85.64(1) does not include all the injuries scheduled in section 85.34(2).

interchangeably in its reasoning. And the three decisions of the commissioner that the court said "reflected . . . the correct approach"—including the one addressing a skin injury—were all under section 85.34(2), just like this case. *Id.* What's more, Laguerre has offered no reason that the analysis should be any different between the two statutes. Nor do we see any reason that the different context, such as the shorter list of applicable body parts, would call for any difference in approach. So we cannot ignore the essential reasoning of *Delaney* or its holding rejecting an interpretation of the statute that an injury to a bodily system is always unscheduled as a matter of law. *See id.*

Here, the commissioner followed the correct case-by-case approach reaffirmed in *Delaney*. Thoughtfully relying on much agency precedent—including the very skin-injury case, *Topete*, that was singled out as "correct" in *Delaney*— the commissioner found that Laguerre's skin injury was scheduled under paragraph "t" because it was confined to the scheduled body parts. And the commissioner rejected essentially the same legal argument the supreme court rejected in *Delaney*—that a bodily system injury must be unscheduled as a matter of law—just with the skin subbed in for the vascular system. Based on the governing statutory text, its structure, and this wealth of precedent, the commissioner's interpretation of section 85.34(2) was not error.

*Paragraph "x" and the AMA Guides*. Laguerre argues that our statutory interpretation should not stop there. He contends that the addition of paragraph "x" to the statute in 2017 abrogated the prior precedent about whether injuries to bodily systems or organs like the skin are scheduled or unscheduled because that new paragraph requires "the extent of loss or percentage of permanent impairment

shall be determined solely by utilizing" the *AMA Guides.* Iowa Code § 85.34(2)(x). According to Laguerre, this means we must use the *AMA Guides* to decide whether a skin injury is scheduled or unscheduled and because the *AMA Guides* calculates a functional-impairment rating for the skin as an impairment of the whole person, skin injuries are now unscheduled. *See AMA Guides* § 8.7, at 178. And while Laguerre recognizes that *Delaney* was decided after paragraph "x" was enacted, he argues that we can still consider his argument because it was not raised there.

Assuming that we could deviate from *Delaney*, we are not persuaded that paragraph "x" requires a different approach. For starters, the text of paragraph "x" says nothing about using the *AMA Guides* to "dictate . . . the scheduling of an injury" as Laguerre urges. Neither does paragraph "x" mandate that the *AMA Guides* be used to define the statutory meaning of the various scheduled body parts, such as the "arm[]" and "leg[]" at issue here under paragraph "t." Iowa Code § 85.34(2)(t). Rather, paragraph "x" merely says that "the extent of loss or percentage of permanent impairment shall be determined solely by utilizing" the *AMA Guides.* Iowa Code § 85.34(2)(x).

Laguerre tries to find textual support in the phrase "the extent of loss"— contending that it is "unambiguous" and "confirms the *AMA Guides*['] authority extends to the scheduling schema." But that phrase cannot carry Laguerre's desired meaning. Properly understood, the two phrases specifying what the *AMA Guides* must be used for both refer to deciding the proportionate reduction that must be made in the number of scheduled weeks of compensation. Recall that technically there are two different types of scheduled injuries that are both treated the same: (1) the literal "loss of" the scheduled body part and (2) the loss of the

use—or in other words, impairment—of the body part. *See Floyd*, 646 N.W.2d at 109; *Moses*, 184 N.W. at 747. And regardless of which type, the statute requires proportional reduction in the weeks of compensation when the injury is "less than that specifically described in the schedule." Iowa Code § 85.34(2)(w); *see also id.* § 85.34(2) (requiring compensation to "be based upon the extent of the disability"). So "the extent of the loss" refers to the amount of reduction when the injury was some physical portion of the body part severed. And "percentage of impairment" refers to the reduction when the injury is a loss of the use of the body part. The technical distinction makes little, if any, practical difference—but this interpretation does give meaning to both phrases.

Further support for this interpretation of paragraph "x" can be drawn from the statutory and administrative-rule history. Before paragraph "x" was enacted, "the *AMA Guides* were a tool the agency could use when determining the extent of permanent disability caused by an employee's work injury, but use of the guides was not required by statute." *Mid Am. Constr. LLC v. Sandlin*, 2 N.W.3d 838, 851 (Iowa 2024) (cleaned up). The discretionary use of the *AMA Guides* was authorized by an administrative rule that stated in part: "The extent of loss or percentage of permanent impairment may be determined by use of the Fifth Edition of the [*AMA Guides*] and payment of weekly compensation for permanent partial scheduled injuries made accordingly." Iowa Admin. Code r. 876-2.4 (Jan. 4, 2017); *see also Sherman*, 576 N.W.2d at 318–19 (rejecting an equal-protection challenge to an earlier version of the administrative rule permitting use of the *AMA Guides*). The legislature borrowed "the extent of loss or percentage of impairment" word-for-word from the administrative rule and basically just replaced the permissive

"may be determined by" with "shall be determined solely by." Laguerre has presented us with no precedent in the decades that the rule was on the books suggesting that the identical language gave the commissioner the authority to use the *AMA Guides* to decide whether an injury is scheduled or not. And the comparison of the rule and the enacted statute strongly suggests that the operative effect of paragraph "x" is merely to make use of the *AMA Guides* mandatory for calculating the proportionate reduction in scheduled weeks as it had long been used—rather than abrogating the settled law interpreting the scope of the scheduled body parts and deciding whether an injury is scheduled or unscheduled.

But even setting all this aside, if we were to accept Laguerre's interpretation of paragraph "x" and his premise that a whole-person impairment rating under the *AMA Guides* mandates that an injury be unscheduled, we would render paragraph "t" a nullity and conflict with the supreme court's decision in *Bridgestone Americas, Inc. v. Anderson*, 4 N.W.3d 676 (Iowa 2024). We can do neither— further showing that Laguerre's interpretation of paragraph "x" cannot be correct.

To understand why requires some explanation of the *AMA Guides.* This book is designed to guide the determination of an individual's "whole person impairment" percentages or ratings, which "estimate the impact of the impairment on the individual's overall ability to perform activities of daily living, excluding work." *AMA Guides* § 1.2, at 4; *see also id.* § 1.8, at 13 ("Impairment percentages estimate the extent of the impairment on whole person functioning."). So "[m]ost organ/body systems chapters in the *Guides* provide impairment ratings that represent the extent of whole person impairment." *Id.* § 1.3, at 9. The chapter for the skin is no exception. *See id.* § 8.7, at 178.

Although "the musculoskeletal chapters provide regional impairment ratings" too, "regional ratings are then converted into whole person impairment ratings." *Id.* § 1.3, at 9. And then multiple regional injuries or injuries to other organ or body systems can be combined for a total whole person impairment. *See id.* § 1.4, at 9–10; *see also, e.g.*, *id.* § 16.1, at 435 ("The impairment evaluation record form is designed for use with unilateral upper extremity impairments" but "whole person impairment values derived for each upper extremity are then combined . . . to derive the total whole person impairment." (emphasis omitted)); *id.* § 8.3, at 176 ("When impairment resulting from a burn or scar is based on nerve dysfunction or loss of range of motion, evaluate the skin impairment separately and combine the impairing rating with that from Chapters 13, The Central and Peripheral Nervous System; 16, The Upper Extremities; or 17, The Lower Extremities.").

Given this structure of the *AMA Guides*, Laguerre's argument that paragraph "x" mandates that an injury be unscheduled whenever the *AMA Guides* calculates a whole-body impairment rating would render paragraph "t" a nullity. Recall that paragraph "t" schedules as an injury "the loss of both arms, or both hands, or both feet, or both legs, or both eyes, or any two thereof." Iowa Code § 85.34(2)(t). Under the *AMA Guides*, two regional impairment ratings are converted to whole person ratings then combined to create one whole-person rating. Since paragraph "t" always involves two regional impairments, the *AMA Guides* would always give a whole-person rating. So under Laguerre's theory, paragraph "x" would always mandate—given the whole-person rating—that the injury is unscheduled. Paragraph "t" would have no effect. That cannot be correct. *See Bridgestone*, 4 N.W.3d at 685 ("[W]e must give meaning to every word in a

statute. None should be ignored. None should needlessly be given an interpretation that cause it to have no consequence." (cleaned up)); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 174 (2012) ("It is no more the court's function to revise by subtraction than by addition."); *id.* at 180 ("[T]here can be no justification for needlessly rendering provisions in conflict if they can be interpreted harmoniously.").

Laguerre's interpretation also conflicts with our supreme court's holding in *Bridgestone*. In *Bridgestone*, the employee sustained a work injury to the shoulder and arm. *Bridgestone*, 4 N.W.3d at 679. And he argued that this was an unscheduled injury because, among other reasons, no paragraph described his combination of injuries. *See id.* at 683–84. But the court rejected this argument, holding that the employee suffered two scheduled injuries—not an unscheduled injury—because nothing in section 85.34(2) prohibits compensation for combinations of scheduled injuries nor extends the narrow definition of unscheduled injuries to include one that is scheduled. *See id.* at 683–85. So under *Bridgestone*, an employee with a shoulder injury and a leg injury—or many other potential combinations—would have two scheduled injuries. But again, as discussed above for paragraph "t," under the *AMA Guides,* the impairment ratings of two injuries to separate body parts are to be combined into a whole person impairment rating. And under Laguerre's interpretation of paragraph "x," that would mandate that the injury be unscheduled—despite the holding of *Bridgestone* that the statute requires them to be two scheduled injuries. This too counsels against Laguerre's interpretation.

In short, as the Tennessee Supreme Court said in rejecting a similar argument under its similar statute, "to require injury to a scheduled member alone to be apportioned to the body as a whole merely because the AMA *Guides* so provide would confound the [statutory] scheme." *Dotson v. Rice-Chrysler-Plymouth-Dodge, Inc.*, 160 S.W.3d 495, 501 (Tenn. 2005).

Paragraph "x" does not mandate the use of the *AMA Guides* to decide whether a skin injury—or any other—is scheduled or unscheduled. So its enactment does not support Laguerre's claim that the commissioner erred in rejecting his interpretation that a non-face-or-head skin injury is always unscheduled as a matter of law under section 85.34(2). We thus affirm the workers' compensation commissioner's decision and the district court's judgment.

**AFFIRMED**